## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**EILEEN PARKER, as Personal**
**Representative of the Estate of**
**AARON MICHAEL PARKER,**
**deceased,**

      **Plaintiff,**

**v.**                              **CASE NO.: 4:22-cv-00060-MW-MAF**

**THE CITY OF TALLAHASSEE,**
**A political subdivision of the**
**State of Florida;**
**DAVID NORTHWAY, Individually;**
**STEPHEN SHIELDS, Individually,**
**STEPHEN DEUTSCHMAN, Individually;**
**DOUGLAS KUTCHERA, Individually;**
**TRENT ROBERTS, Individually;**
**CHRISTOPHER ROTH, Individually;**
**RUSSELL SCHNEIDER, Individually;**
**ROBERT CLAYTON, Individually and**
**CLIFFORD CROUCH, Individually;**

      **Defendants.**
_____/

## DEFENDANT CITY OF TALLAHASSEE'S MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE

Defendant, CITY OF TALLAHASSEE, by and through undersigned counsel,

pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Count I of

Plaintiff's Amended Complaint (ECF No. 22), with prejudice, and in support states

as follows:

## BACKGROUND

### I.      Summary of Material Facts Alleged Against the City of Tallahassee

Plaintiff Eileen Parker is the Personal Representative of the Estate of Aaron Michael Parker ("Parker"), an adult who died on February 18, 2018. ECF No. 22, ¶ 1. During the late evening hours on February 9, 2018, an employee of Burger King called 9-1-1 and reported a white male dancing and laying naked on the ground. ECF No. 22, ¶ 18. Tallahassee Police Department ("TPD") Officers David Northway, Stephen Deutschman, Clifford Crouch, Douglas Kutchera, Trent Roberts, Christopher Roth, Russell Schneider, and Stephen Shields all responded to the scene at different times during the incident and are each being sued in their individual capacities. ECF No. 22, ¶¶ 4-12, 19-22. Leon County Emergency Medical Services ("LCEMS") arrived on the scene at 10:46 p.m. ECF No. 22, ¶ 20.

The Complaint details the allegations regarding the Defendant officers' attempts to gain compliance with their commands to Parker and their attempts to keep Parker out of the roadway[1] and prevent him from being a danger to both himself and others. ECF No. 22, ¶¶ 23, 25-27, 29-41. Parker was tased three times and officers also had to restrain him. ECF No. 22, ¶ 39, 41. LCEMS Technicians administered medications to Parker. ECF No. 22, ¶ 29. Parker was then transported

---

[1] Burger King is located at 1060 W. Tennessee Street (U.S. Hwy 90) Tallahassee, FL ECF No. 22, ¶ 18

to the Tallahassee Memorial Hospital ("TMH") where he passed away, nine days later on February 18, 2018. ECF No. 22, ¶ 43. Plaintiff alleges the Defendant officers used unreasonable and excessive force, were deliberately indifferent to a medical need, and failed to intervene. ECF No. 22, ¶¶ 67-183.

TPD Internal Affairs Investigator Paul Osborn conducted an investigation, and it was ultimately determined that the officers did not use excessive force. ECF No. 22, ¶ 44. The Complaint alleges that "[S]ince April 2011, after the in-custody death of Kevin Campbell, TPD and the City of Tallahassee knew or should have known of the ongoing, systematic [sic] issue with their police officers and the use of excessive force." ECF No. 22, ¶ 48. The Complaint then goes on to reference a Police Executive Research Forum ("PERF") that reviewed the TPD's policies and procedures and made recommendations. ECF No. 22, ¶¶ 49-57. The Complaint stated "[A]fter the PERF review and despite being aware of the significant issues within their department, the TPD failed to change the policies, failed to train officers, and continued to allow unqualified officers to patrol the City under the color of law." ECF No. 22, ¶ 57.

In Count I, against the City of Tallahassee, Plaintiff re-alleges all the "Common Allegations of Facts," alleges no additional facts supporting liability of the City, and instead alleges only conclusory legal allegations not sufficiently supported by any statements of fact. ECF No. 22, ¶¶ 59-66. Plaintiff alleges the City

violated Parker's constitutional rights through its policies, procedures, practices, supervision, training, discipline, hiring and retention or lack thereof. ECF No. 22, ¶ 60. Plaintiff alleges the City failed to properly train officers on the use of force, dealing with mentally ill or intoxicated citizens, appropriate physical control techniques, use of tasers, and de-escalation. ECF No. 22, ¶¶ 61-62. Finally, Plaintiff alleges the City ratified the actions and conduct of the individually named officers [EFC No. 22, ¶ 63] and illegally trained officers on an "excited delirium pin." ECF No. 22, ¶ 64.  Plaintiff states she is seeking all damages against the City as allowed by law, including punitive damages. ECF No. 22, ¶ 66.

## MEMORANDUM OF LAW

### I.      Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P.* 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." *Fed.R.Civ.P.* 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[;]" *Twombly*, 550 U.S. at 555 (citation omitted); and requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, . . . (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 129 S.Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca–Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012). In deciding a Rule 12(b)(6) motion to dismiss, a court need not accept as true conclusory allegations, unwarranted factual deductions, and unsupported conclusions of law or of mixed law and fact. *Sinaltrainal*, 578 F.3d at 1268; *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 289 F.3d 1268, 1270 (11th Cir. 2002); *Mamani*

5

*v.* Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) ("[L]egal conclusions without adequate factual support ae entitled to no assumptions of truth."). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Where a plaintiff is unable to state a cause of action and further leave to amend the complaint is futile, claims should be dismissed with prejudice. [2]

---

[2] This matter was filed in the Gainesville Division, where the Clerk docketed and assigned it, bearing case number 1:22-cv-00034-RH-GRJ. A First Amended Complaint was filed the following day. On February 7, 2022, Magistrate Judge Jones entered an Order directing the Clerk to transfer the case to the Tallahassee Division. (ECF No. 6 in that case). On May 7, 2021, Ms. Parker initiated a nearly identical action in this Court, which the Clerk docketed and assigned, bearing case number 4:21-cv-00189-AW-MAF. That action included the same parties (except for Defendant Clayton who is added to this action) and asserted some of the same claims against the City based upon the same encounter Parker had with the police on February 9, 2018. All defendants filed motions to dismiss (ECF No. 12, 13); and after Plaintiff filed a First Amended Complaint (ECF No. 16), defendants again moved to dismiss (ECF No. 20, 21). On August 24, 2021, the Court granted the motions and dismissed Plaintiff's claims without prejudice. (ECF No. 27). Plaintiff chose not to amend the amended complaint, instead, filing a Notice of Voluntary Dismissal. (ECF No. 28). On February 6, 2022, she again initiated a nearly identical action in this Court, which the Clerk docketed and assigned, bearing case number 4:22-cv-00060-MW-MAF. (ECF No. 1). Plaintiff amended the complaint on February 7, 2022. (ECF No. 5). All defendants filed motions to dismiss. (ECF No. 16, 17). In response, Plaintiff petitioned the Court to amend the Complaint again. (ECF No. 19). The Court allowed Plaintiff another opportunity and on April 28,

*See Muhammad v. JP Morgan Chase Bank, NA*, 567 F. App'x 851, 853-54 (11th Cir. 2014); *Locke v. SunTrust Bank*, 484 F.3d 1343 (11th Cir. 2017).

## II.   Municipal Liability under 42 U.S.C. § 1983

Plaintiff has sued the City of Tallahassee alleging municipality liability for unconstitutional custom, policy, or practice. Under *Monell v. Department of Social Services*, the City "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, a § 1983 claim against a municipality may not be premised on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Rather, to be liable under § 1983, the alleged injury must be the result of the "government's policy or custom" as implemented by "its lawmakers or by those whose edicts of acts may fairly be said to represent official policy." *Id*. "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)). Where liability is premised on a custom, "a plaintiff must establish a widespread practice

---

2022, a Second Amended Complaint was filed. (ECF No. 22). In total, this is now Plaintiff's fifth (5th) attempt to state a cause of action against the City.

that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal quotations and citations omitted).

When municipal liability is alleged under § 1983, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *McDowell*, 392 F.3d at 1291 (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). This requires a showing that the City's actions were "taken with deliberate indifference as to its known or obvious consequences" and that this "*deliberate* conduct…was the 'moving force' behind [the] injury." *McDowell*, 392 F.3d at 1291-1292 (citations omitted) (alterations and emphasis in original).

A claim against a municipality under § 1983 must be predicated on: (1) an officially promulgated city policy or (2) an unofficial custom or practice of the City shown through the repeated acts of a final policymaker for the City. *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "[V]ague and conclusory allegations will not support a claim under 1983." *Hall v. Smith*, 170 F. App'x 105, 107-08 (11th Cir. 2006) (unpublished).

As an initial matter, Plaintiff's claim fails because she has not alleged sufficient facts demonstrating her constitutional rights were violated (i.e., that

officers used excessive force, were deliberately indifferent to a medical need, and failed to intervene). However, even if she pled sufficient facts on a constitutional violation, her claim against the City would not survive a motion to dismiss because she has not alleged a City policy that constituted deliberate indifference to that constitutional right, nor has she alleged any facts supporting the argument that the City had a custom or policy that caused such violation.

### a. Plaintiff Fails to Identify a City Policy That She Claims Caused her Constitutional Deprivation

Plaintiff's complaint does not state a claim for municipal liability under § 1983. Plaintiff has not identified an officially-promulgated City policy that she claims was the moving force in her constitutional deprivation. *See Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (holding to attribute liability to municipality under § 1983, a plaintiff must demonstrate that the municipality had official policy that was the moving force of a constitutional violation). Rather than identifying a City policy, Plaintiff continually cites to a Police Executive Research Forum ("PERF") report in an attempt to allege deficiencies in City policies. ECF No. 22, ¶¶ 49-56. Plaintiff argues that the PERF report recommended to add more precise definitions to key terms, shift the policy language for a response to resistance, be more specific about how policy violations are investigated, have officers attend mental health first aid training, and for the City and TPD to establish plans to form crisis intervention teams. ECF No. 22, ¶¶ 49-56. These allegations fall far short from

Plaintiff's burden to identify a city policy that caused her injury. Plaintiff's burden is not to show whether a TPD policy could be improved, revised, or altered, but rather that there was an existing policy, custom, or practice that was the moving force behind the alleged constitutional violation. Plaintiff has failed to cite to a single policy, practice, or custom and only makes legal conclusions not supported by any fact.

Even assuming, for argument's sake, that the allegations contained in Plaintiff's second amended complaint concerning the PERF report were sufficient to survive a motion to dismiss, the claims are conclusory and entirely false. The PERF was initiated in 2014 with the recommendations published in June 2015. In February 2016, the Tallahassee Police Department issued a revised General Order 60, incorporating the PERF recommendations. [Defense Exhibits 1-2]. Defense Exhibit 1 is the version of General Order 60 prior to the PERF recommendations. Defense Exhibit 2 is the revised version of General Order 60 following the PERF recommendations. As shown in Defense Exhibit 2, the revised general order shifted to the "objective reasonableness" standard, added more precise definitions, and required the Internal Affairs Unit to conduct a compliance review of each response to resistance encounter. [Defense Ex. 2]. This demonstrates Plaintiff's allegations in paragraphs 49-53 of her second amended complaint are false. "When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits

govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)). Because the attached General Order, established in February 2016, refutes Plaintiff's conclusory and speculative allegations about failing to take any action based on the PERF recommendations, Plaintiff's allegations concerning the PERF report should be wholly discredited. *Crenshaw*, 556 F.3d at 1292 (citing *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (holding that "[t]he fact remains that where a plaintiff…relies upon documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.")).

Plaintiff fails to allege facts to support an argument that the City has a policy that resulted in any constitutional violations. Her alleged facts concerning the PERF report in no way demonstrate a lacking or deficiency of City policy. Policies and procedures can always be improved, or redrafted, and additional training can always be recommended. That does not mean, and Plaintiff does not argue, that the existing policies or training were deficient, policymakers were aware of such a deficiency, and deliberately indifferent to it. Furthermore, Plaintiff's statements concerning the PERF and TPD's actions following the publication of recommendations are entirely false. The revised General Order 60 [Defense Ex. 2] was in place well before Parker's interaction with TPD officers (the general order was revised and issued in

February 2016, two years prior to incident in the case at hand). Plaintiff's attempts to establish municipal liability elsewhere are nothing more than conclusory words and phrases found in law enforcement liability case law.

### b. Plaintiff Fails to Identify a Custom or Policy that Caused her Constitutional Deprivation

Plaintiff has failed to identify an officially promulgated policy and therefore she may only proceed against the City by alleging an unofficial custom or practice shown through repeated acts of a final policymaker. *Grech v. Clayton County, Ga.*, 335 F.3d at 1329. To establish "custom," a plaintiff is compelled to prove a de facto unconstitutional city practice that, "although not authorized by written law or express municipal policy," is "so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). "[A] custom must be such 'a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.'" *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up)). In order for the plaintiff to recover under this theory, the plaintiff must show that the practice or custom was the "moving force" behind the constitutional violation. *Crenshaw v. City of Defuniak Springs*, 891 F. Supp. 1548, 1554 (N.D. Fla. 1995). "[N]ot only must there be some degree of 'fault' on the part of the municipality in establishing or

tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation." *Id*. "A single incident of a constitutional violation does not establish a policy or custom even when the incident involves several employees of the municipality." *Craig v. Floyd Cty.*, 643 F.3d 1306, 1311 (11th Cir. 2011); *Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 673 (11th Cir. 2016). As the custom must be widespread and repeated, "random or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986). To plead a pattern, the plaintiff must allege other incidents involving facts substantially similar to the case at hand. *See Gurrera v. Palm Beach Cnty. Sheriff's Office*, 657 F. App'x 886, 893 (11th Cir. 2016) ("A pattern of similar constitutional violations is ordinarily necessary") (cleaned up) (*quoting Craig v. Floyd Cnty.*, 643 F.3d at 1310).   Moreover, the Plaintiff must allege that a final policymaker for the municipality, "know[s] about [the custom] but failed to stop it." *Brown*, 923 F.2d at 1481. Last, a plaintiff must allege that the municipality was "at fault in some sense for establishing or maintaining the policy which causes the injurious result." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987). Here, Plaintiff has completely failed to assert (1) a practice or custom (2) that was sanctioned by a final policymaker for the City and (3) that contributed to her injury.

13

First, Plaintiff has not adequately alleged a repeated, widespread unofficial custom sufficient to survive a motion to dismiss. In an attempt to do so, Plaintiff makes the following allegation in her second amended complaint:

> 48. Since April 2011, after the in-custody death of Kevin Campbell, TPD and the City of Tallahassee knew or should have known of the ongoing, systematic [sic] issue with their police officers and the use of excessive force.

[ECF No. 22, ¶ 48]

One prior incident involving an in-custody death does not permit a reasonable inference of widespread practices "so permanent and well settled as to constitute a custom or usage with the force of law." *Brown*, 923 F.2d at 1481. In citing the single other incident, Plaintiff does not even assert facts that it was substantially similar to the case at hand. *Gurrera*, 657 F. App'x at 893. Moreover, there are not enough facts alleged to permit an inference that this 2011 incident with Mr. Campbell involved misconduct, as opposed to lawful (but perhaps unpleasant) activity. *See Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) (dismissing a claim for municipal liability, in part as the plaintiffs did not allege whether the "other shootings were deemed unjustified, unconstitutional, or were anything other than legitimate, self-defense shootings"). Plaintiff does not make a single factual assertion demonstrating in any way how one prior in-custody death was factually similar to the case at hand, was made by any wrongdoing on the part of the Tallahassee Police Department, involved any constitutional violations, or created a

"department-wide controversy surrounding in-custody deaths and the use of force within the department" as asserted in paragraph 54 of Plaintiff's Second Amended Complaint. Plaintiff's conclusory allegation does not sufficiently allege a widespread custom or practice that is "obvious, flagrant, rampant, and of continued duration." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Where Courts have denied motions to dismiss when plaintiffs allege several similar past incidents of conduct, only one past incident has consistently remained insufficient to demonstrate a custom. [3] Plaintiff has not adequately alleged a repeated, widespread unofficial custom sufficient to survive a motion to dismiss. Merely alleging that the City has such a widespread practice is not sufficient. *See Sanchez v. Miami-Dade Cnty.*, No. 06-21717-CIV, 2007 WL 1746190, at *3 (S.D. Fla. Mar. 28, 2007) (holding that unsupported "vague allegation[s]" are not sufficient to plead an official

---

[3] *See Rivas v. Figueroa*, No. 11-23195-CIV, 2012 WL 1378161, at *3 (S.D. Fla. Apr. 20, 2012) (denying motion to dismiss where the plaintiff alleged "in great detail, sixteen alleged instances" of officers who engaged in similar conduct and received no disciplinary action); *Vasquez v. City of Miami Beach*, 895 F. Supp. 2d 1275, 1277-78 (S.D. Fla. 2012) (denying motion to dismiss where the plaintiff alleged facts relating to thirty-eight incidents involving excessive force); *Cf. Hawk v. Klaetsch*, 522 F. App'x 733, 735-36 (11th Cir. 2013) (finding three prior similar incidents over the past five years did not constitute frequent, widespread, or rampant abuse); *Madison v. City of Gainesville, Fla.*, No. 1:15-CV-63, 2016 WL 10518447, at *6 (N.D. Fla. Aug. 9, 2016) (granting summary judgment as to the City where the plaintiff did not present any examples of past similar conduct that caused a constitutional violation that might have put the City on notice and presented no evidence to suggest that a final policymaker made or ratified the decision).

custom or practice); *Iqbal*, 556 U.S. at 678 (holding that the plaintiff must plead factual content to permit a court to "draw the reasonable inference" that the defendant is liable).

### i. *Plaintiff Fails to Identify a Final Policymaker*

Since Plaintiff is unable to establish a City policy or custom, she fails to state a claim against the City. However, it should be noted that in addition to failing to assert facts demonstrating a policy or custom, Plaintiff also failed to assert any facts that a City policymaker knew of the alleged custom and deliberately failed to take action or was deliberately indifferent and that the alleged policy or custom caused a constitutional violation.

"When suing local officials in their official capacity under § 1983, the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (footnote omitted). A "custom is a practice that is so settled and permanent that it takes on the force of law," whereas a "policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "Only those officials who have final policymaking authority may render the municipality liable under § 1983" for either a custom or policy. *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996). The

courts look to state and local law to determine whether a particular official has final policymaking authority. *E.g.*, *Davis v. City of Apopka*, 734 F. App'x 616, 619 (11th Cir. 2018); *Cooper*, 403 F.3d at 1221.

In her Second Amended Complaint, Plaintiff simply asserts, "In the Use of Force Report, dated February 19, 2018, the final policymaker at TPD, Defendant CLAYTON, did not ever view the video of the incident as part of the investigation when reviewing his officers' conduct." ECF No. 22, ¶ 46. State and local law mandates that the City's Chief of Police or City Manager is a final policymaker. The Florida Constitution provides that "[m]unicipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government." Fla. Const. art. VIII, § 2(b). The City has authorized "[t]he city manager shall be responsible to the city commission for the proper administration of all affairs of the city and to that end, the city manager's powers are and they shall be to see that the laws and ordinances are enforced [for law enforcement]." City of Tallahassee Code of Ordinances No. 19-O-19. And "there are other indicia in state law that police chiefs in Florida have final policymaking authority in their respective municipalities for law enforcement matters. *Cooper*, 403 F.3d at 1222 (citing Florida statutes that vest in municipal police chiefs authority to determine police procedure for coordinating communication between law enforcement officers and to declare states of emergency and assume emergency powers).

17

Plaintiff in no way alleges in her Second Amended Complaint that Defendant Clayton was a final policymaker. Plaintiff's one sentence in paragraph 46 of her Second Amended Complaint, naming Defendant Clayton as a "final policymaker," is purely conclusory and does not include any facts whatsoever asserting that Clayton's decisions have legal effect without further action by a governing body, or if his decisions are not subject to meaningful administrative review. There is nothing in the Complaint asserting Defendant Clayton has final policymaking authority or is an individual whose decisions represent the official policy of the local governmental unit.

### c. Plaintiff Fails to State a Claim of Municipal Liability for Failure to Train

In lieu of alleging a policy or custom, a plaintiff may invoke the narrower "failure to train" theory of liability, although the circumstances giving rise to such liability are quite limited: A plaintiff must allege facts demonstrating "deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (alteration added; footnote call number omitted). A deficient training of one officer is not sufficient to meet this standard; rather the deficiency must be widespread and closely related to the plaintiff's injury. *Id.* at 390-91.

Section 1983 does not support automatic liability even if a municipality "inadequately trained or supervised its police officers and those officers violated [a

plaintiff's] constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Liability attaches "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton*, 489 U.S. at 389; *see also Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 414-15. To meet the "deliberate indifference" standard, a plaintiff must allege that "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Lewis v. City of West Palm* Beach, 561 F.3d 1288, 1293 (11th Cir. 2009) (citations omitted). A claim of deliberate indifference premised on a failure to train or supervise usually requires a showing of "a widespread pattern of similar constitutional violations by untrained employees." *Mingo v. City of Mobile*, 592 F. App'x. 793, 799 (11th Cir. 2014). "Prior incidents ... must involve facts substantially similar to those at hand in order to be relevant to a deliberate-indifference claim." *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (alteration added) (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)). Indeed, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id*.

Accordingly, to sustain a § 1983 failure-to-train claim, a plaintiff must first establish culpability on the part of the municipality or proof of "the existence of a widespread practice that, although not authorized by written law or express

municipal policy, is so permanent and well settled as to constitute custom or usage with the force of law." *City of Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (citations omitted).

Plaintiff's allegations fail to state a claim under this theory for the same reasons her allegations fail under her de facto policy theory: her key allegations are legal conclusions. Plaintiff attempts to establish liability through the following allegations in her second amended complaint:

> 28. The TPD created, condoned, and the named officers utilized the "excited delirium pin." Plaintiff alleges that excited delirium is not a legitimate medical condition and therefore further alleges that the policy created based upon excited delirium is unconstitutional.

> \*\*\*

> 48. Since April 2011, after the in-custody death of Kevin Campbell, TPD and the City of Tallahassee knew or should have known of the ongoing, systematic [sic] issue with their police officers and the use of excessive force.

> \*\*\*

> 61. The TPD did not train Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, or CROUCH on de-escalating crises with mentally ill or intoxicated citizens. The TPD also failed to ratify the officers' use of excessive force, including the tasing, the excited delirium pin, and the administration of drugs upon AARON MICHAEL PARKER. The TPD failed to properly train the Defendant officers on use-of-force, dealing with mentally ill or intoxicated citizens, or appropriate physical control techniques causing AARON MICHAEL PARKER'S death.

62. The TPD failed to properly train its officers on tasers on individuals such as AARON MICHAEL PARKER, causing AARON MICHAEL PARKER'S death.

63. The TPD ratified the actions and conduct of the individually named officers, thereby making their actions the official TPD policy.

64. The TPD created an illegal policy, training officers to use the "excited delirium pin" for use on those believed to be suffering from excited delirium, a highly debated medication condition. TPD knew or should have known that excited delirium is not a widely accepted medical condition; instead, they created an experimental technique and then trained its officers to render medical assessments and utilize the "excited delirium pin." The policies of the TPD violated AARON MICHAEL PARKER'S Constitutional Rights.

In addition to the legal conclusion above, Plaintiff alleges the City failed to properly train officers on the use-of-force, dealing with mentally ill or intoxicated citizens, appropriate physical control techniques, use of tasers, and de-escalation, and improperly trained officers on an "excited delirium pin." ECF No. 22, ¶¶ 61-62, 64.

Again, Plaintiff has failed to assert a widespread pattern of similar constitutional violations by untrained employees. The only reference to a prior incident was a 2011 in-custody death. ECF No. 22, ¶ 48. However, Plaintiff provides absolutely no facts demonstrating the 2011 incident was similar to this matter or that the 2011 incident resulted in constitutional violations. Ultimately, citing one prior incident that occurred seven years before Mr. Parker's interaction with law enforcement does not in any way demonstrate that the City knew of a need for better

training as a result of recurring constitutional violations and made a deliberate choice not to take any action.

Additionally, Plaintiff's argument that the City "created an illegal policy" because officers allegedly placed Parker in an "excited delirium pin" is precisely the type of *respondeat superior* argument for municipal liability that has been flatly rejected in every federal court in which it was brought. Other than the officers allegedly using the pin, Plaintiff offers no further facts whatsoever to support the legal conclusions that the City created a policy concerning an "excited delirium pin" and trained officers on such policy.

Even if this Court accepted as true that the City inadequately trained its employees on the areas alleged by Plaintiff and those employees violated Parker's rights (which it did not and they did not), the City would not be liable under section 1983 because municipal liability attaches only where the final policymaker knew of the need for better training as a result of recurring constitutional violations **and** made a deliberate choice not to implement corrective measures. *Canton*, 489 U.S. at 388-89. Plaintiff has not asserted a single fact that a final policymaker knew of the need for better training as a result of recurring constitutional violations and made a deliberate choice to not take any action. The burden is not to assert facts that other additional training may be available to TPD officers, but rather the current training

was inadequate, it was an official policy, and the policy violated constitutional rights.

### d. Plaintiff Fails to State a Claim of Municipal Liability Based on Ratification

Plaintiff also relies on a ratification theory. In doing so, she makes the following allegations in her second amended complaint:

> 44. Investigator Paul Osborn of the TPD was assigned to investigate the incident and referenced the LCSO helicopter video. The TPD internal affairs unit then conducted no legitimate investigation into the officer's conduct and concluded that the Defendant officers named herein did not violate TPD policy and otherwise ratified the conduct of the Defendant Officers described herein.

> 45. TPD had the video, and despite having requested it multiple times, TPD never turned over the video to the family, whitewashed the officers' actions, and very quickly found no wrongdoing on the part of their officers.

> 46. In the Use of Force Report, dated February 19, 2018, the final policymaker at TPD[4], Defendant CLAYTON, did not ever view the video of the incident as part of the investigation when reviewing his officers' conduct.

> 47. The TPD did not use the assistance of the Florida Department of Law Enforcement (FDLE) to perform an independent investigation

---

[4] This statement is a legal conclusion. "A municipal employee generally is considered a 'final policymaker' for governmental liability purposes under § 1983 only if his decisions have legal effect without further action by the governing body, and if the governing body lacks the power to reverse the employee's decision; a municipal official is not a final policymaker, however, when his or her decisions are subject to meaningful administrative review. *Willingham v. City of Valparaiso, Fla.*, 97 F. Supp. 3d 1345 (N.D. Fla. 2015), *aff'd*, 638 F. App'x 903 (11th Cir. 2016). Plaintiff offers no facts to support her assertion that Officer Clayton was a final policymaker.

regarding the in-custody death, the physical force, the medication, or repeated taser use upon AARON MICHAEL PARKER, causing his death.

\*\*\*

60. Plaintiff is entitled to relief against Defendant CITY pursuant to 42 USC 1983 for violation of the Fourth Amendment because the CITY, in its policies and procedures, supervision, training, and discipline, hiring, and retention, or lack thereof, and trained the named Defendant officers the excited delirium pin, and other techniques described above which were dangerous and deliberately indifferent to the known risks of serious harm to AARON MICHAEL PARKER or other persons in like circumstances. The TPD also ratified the conduct of the named Defendant Officers herein and, as such, are liable pursuant to 42 USC 1983.

A municipality can be liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (quoting *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002). To hold the City liable under § 1983 ratification theory, Plaintiff must show a "persistent failure to take disciplinary action against officers" who use excessive force, which "can give rise to the inference that a municipality has ratified conduct, thereby establishing a 'custom' within the meaning of *Monell*." *Hawk v. Klaetsch*, 522 F. App'x 733, 736 (11th Cir. 2013). However, as discussed above, Plaintiff is unable to point to a widespread practice of excessive force to begin with and in fact provides absolutely no facts to

24

support an assertion that there is a persistent failure of the City to take disciplinary actions against officers.

When a plaintiff is relying not on a pattern of unconstitutional conduct, but on a single incident, he must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis before a court can hold the government liable on a ratification theory. *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015). Only when "the authorized policymakers approve a subordinate's decision and the basis for it have they ratified that decision." *Praprotnik*, 485 U.S. at 127.

Plaintiff argues that the City should be liable because it "ratified the actions and conduct of the individually named officers, thereby making their actions the official TPD policy." ECF No. 22, ¶ 63. This argument fails. The city must "cause…the constitutional violation; that is, [the City] must officially sanction or order the action." *Salvato*, 790 F.3d at 1296. Plaintiff presented no factual assertions of a policy, approved by the police Chief or any member of the City's governing body, that led to defendant officers' actions. Plaintiff also fails to present any evidence of any "custom" not "approv[ed] through…official decision-making channels," that led to officers' actions. *Monell*, 436 U.S. at 658.

Additionally, any argument that the City failed to conduct an adequate investigation would also fail to establish municipal liability. Plaintiff does not allege

any facts that a final policymaker of the City had an opportunity to review any part of the officers' decisions or actions before those decisions and actions became final, much less that a final policymaker approved the officers' decisions and the bases for them. *See Salvato*, 790 F.3d at 1296. For argument's sake, even if Plaintiff did allege sufficient facts that the investigation was inadequate and her constitutional rights had been violated, "'[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality" *Colardo-Keen v. Rockdale County, Ga.*, 775 F. App'x 555, 572 (11th Cir. 2019) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)), because "[a] single incident [is] not…so pervasive as to be a custom." *Grech*, 335 F.3d at 1330 n. 6. "And although a 'persistent failure to take disciplinary action' can give rise to an inference of municipal policy or custom, 'an isolated incident is, by definition, not a persistent failure.'" *Colardo-Keen*, 775 F. App'x at 573 (quoting *Salvato*, 790 F.3d at 1297). Further, "a single failure to investigate an incident cannot have caused that incident," and thus cannot form the basis for municipal liability. *Salvato*, 790 F.3d at 1297. For these reasons, Plaintiff's municipal liability argument based on ratification is insufficient to survive a motion to dismiss.

### III. Plaintiff's Claim for Punitive Damages Against the City Must be Stricken

Under Count I against the City, the Complaint states that the "Plaintiff seeks costs, attorney fees, demands a jury trial, under this claim, and all other damages

allowed by law, including punitive damages for the conduct complained herein."
ECF No. 22, ¶ 66. The United States Supreme Court has held unequivocally that "[a]
municipality is immune from liability for punitive damages in a § 1983 action." *City
of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Colvin v.
McDougall*, 62 F.3d 1316, 1319 (11th Cir. 1995) (Finding no differentiation between
a municipality and a Sheriff's Department and barring a punitive damage award
against the Sheriff in his official capacity); *Healy v. Town of Pembroke Park*, 831
F.2d 989, 991 (11th Cir. 1987) (punitive damages are not available under § 1983
against the Town). Therefore, Plaintiff's claim for punitive damages against the City
must be dismissed.

## CONCLUSION

Here, Plaintiff has presented only the most threadbare and conclusory
allegations in an attempt to present a prima facie case for municipal liability against
the City of Tallahassee. Although Plaintiff's Second Amended Complaint contains
legal conclusions of municipal liability, she wholly fails to allege a single specific
fact in support, and further relies upon vicarious-type liability, instead of the more
stringent requirements established by *Monell*, *Praprotnik, Pembaur,* and the 30-plus
years of jurisprudence which has developed in this area of law. Unsupported by any
facts, these allegations are exactly what the Court's decisions in *Iqbal* and *Twombly*
proscribe, warranting dismissal.

Although Plaintiff is only required to contain a "short and plain" statement of the claim, the claim against the City of Tallahassee impermissibly is nothing more than conclusory statements and a formulaic recitation of certain elements which must be alleged to establish liability against the City. Using terms like "deliberate indifference," "policy", "custom," and "failing to adequately train" without any supporting factual allegations is insufficient to state a claim as a matter of law.

WHEREFORE, for the foregoing reasons, Defendant, City of Tallahassee respectfully request this Court grant the instant Motion and dismiss Count I against the City of Tallahassee, with prejudice, and order such other relief as the Court deems proper. Plaintiff will never be able to allege a cause of action against the City. She is represented by counsel and has already had an opportunity to amend her complaint three times in this case (five times overall) in an attempt to state claim. Therefore, the dismissal should be with prejudice.

Respectfully submitted on May 9, 2022.

*s/ Jennifer M. Painter*
Florida Bar Number: 110966
Assistant City Attorney
City Attorney's Office
300 South Adams Street, Box A-5
Tallahassee, FL  32301
T: (850) 891-8554
F: (850) 891-8973
Jennifer.Painter@talgov.com
*Attorney for Defendant*
*City of Tallahassee*

## CERTIFICATION OF WORD COUNT

Pursuant to Rule 7.1(F) of the Local Rules of the Northern District of Florida, Defendants certify that the foregoing Motion to Dismiss contains 3,712 words.

*s/ Jennifer M. Painter*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 9, 2022 a true and correct copy of the foregoing was electronically filed in the United States District Court for the Northern District of Florida using the CM/ECF system, which will send a notice of electronic filing to all counsel of record:

John Vernon Moore, Esquire
The Law Office of
John Vernon Moore, P.A.
700 N Wickham Road, Suite 206
Melbourne, Florida 32935
john@jmoorelegal.com
*Attorney for Plaintiff*

Patrick J. Landy, Jr., Esquire
Bross & Savy, PLLC
997 S. Wickham Road
Melbourne, Florida 32904
plandy@brosslawoffice.com
*Attorney for Plaintiff*

Michael P. Spellman, Esquire
Sniffen & Spellman, P.A.
123 North Monroe Street
Tallahassee, Florida 32301
mspellman@sniffenlaw.com
*Counsel for Defendant Officers*

*s/ Jennifer M. Painter*