
DEFENDANT'S EXHIBIT 2

# TALLAHASSEE POLICE DEPARTMENT
## GENERAL ORDERS



| | SUBJECT | |
|---|---|---|
| Proudly Policing Since 1841 | Response to Resistance | Nationally Accredited 1986 |
| | **CHIEF OF POLICE** | |
| | *Signature on File* | |
| **NUMBER** 60 | **ORIGINAL ISSUE** 07/28/1986 | **CURRENT REVISION** 02/04/2016 | **TOTAL PAGES** 16 |

**AUTHORITY/RELATED REFERENCES**

FS Chapter 776, Justifiable Use of Force
General Order 7, Conducted Electrical Weapon
General Order 29, Internal Affairs and Administrative Investigations
General Order 61, Weapons
General Order 63, Officer Involved Action Resulting in Serious Injury or Death
General Order 70, Firearms/Less-lethal Firearms
PTL-35, PepperBall Weapon System
K9-2, K-9 Utilizations
FDLE/CJST Defensive Tactics Training Guide

**ACCREDITATION REFERENCES**

CALEA Chapter     1, 33

**KEY WORD INDEX**

**Commander and Legal Advisor Responsibilities**         Procedure IX
**Deadly Force Guidelines**         Procedure III
**General Guidelines**         Procedure I
**Internal Affairs Unit Responsibilities**         Procedure X
**Less-lethal Force Guidelines**         Procedure II
**Report of Injury and Medical Aid Protocols**         Procedure VI
**Response to Resistance –Control/Force Options**         Procedure V
**Response to Resistance Report**         Procedure VII
**Shooting an Animal**         Procedure IV
**Supervisory Responsibilities**         Procedure VIII
**Training Section Responsibilities**         Procedure XI

## POLICY

The Department and its officers recognize the value of all human life.  While the majority of officer/citizen interactions are peaceful, the Department recognizes there are limited circumstances when officers will face resistance to their lawful orders and efforts.  When officers are engaged in any response to resistance encounter, they are responsible for making the preservation of human life their first priority and using only the amount of force objectively reasonable to effectively bring the incident under control.

## DEFINITIONS

**Active Resistance**:  Physically evasive movements, with or without verbal resistance, to defeat an officer's attempt at control, but not intended to harm the officer.  Examples include, but are not limited to, linking arms with others, bracing or tensing, attempts to push or pull away, and walking or running away.

**Aggravated Aggressive Resistance**:  Overt, hostile, attacking movements, with or without a weapon, likely to result in death or great bodily harm to any person (i.e., the officer, the person offering the resistance, others).  Examples include, but are not limited to, the use of a firearm, use of blunt or bladed weapon, and extreme physical force.

**Aggressive Resistance**:  Assaultive or attacking movements which present an imminent threat of physical harm (but not likely to cause death or great bodily harm) to any person (i.e., the officer, the person offering the resistance, others), and prevents the officer from placing the person under control and in custody.  Examples include, but are not limited to, taking a fighting stance, punching, kicking, striking, biting, and attacking with weapons not likely to cause great bodily harm or death.

**AVR**:  Digital **A**udio and **V**ideo **R**ecording System.

**Conducted Electrical Weapon (CEW)**:  A Department-issued conducted energy device designed to affect the sensory and motor functions of the central nervous system, which may be used in either drive stun applications or propelled probe applications.

**Deadly Force**:  Any force likely to cause great bodily harm or death.

**Deadly Force Situation**:  When an officer believes it is objectively reasonable to use deadly force to defend their life or the life of another person from an imminent threat of great bodily harm or death.

**Excessive Force**:  The application of more force than is objectively reasonable in situations where some force is necessary.

**Force**:  Any physical strike or instrumental contact with a person, or any significant physical contact that restricts the movement of a person.  The term includes, but is not limited to, discharging a firearm at a person, the use of a CEW, OC Spray or other chemical sprays, bean bag shotgun, PepperBall weapon system, or hard empty hands tactics, the taking of a person to the ground, or a canine application.  The term does not include escorting or handcuffing a person offering no or minimal resistance.

**Great Bodily Harm**:  An injury likely to result in permanent disability, protracted loss or impairment of function of any bodily member or organ, or significant disfigurement.

**Less-lethal Firearm**:  Any firearm utilizing less-lethal munitions (i.e., any projectile designed to stun, temporarily incapacitate, or cause temporary discomfort to a person without penetrating their body).

**Less-lethal Force**:  Any force other than deadly force which is neither likely to cause, nor intended to cause, death or great bodily harm.

**Non-deadly Force Situation**:  A response to resistance encounter which is not considered a deadly force situation.

**Objectively Reasonable**:  In the context of response to resistance encounters, officer's actions which are deemed appropriate in light of the facts and circumstances confronting them at the time.  An officer's response to resistance actions are always analyzed from the perspective of a reasonable officer possessing the same information and facing the same circumstances as the officer who actually used force.

**OC Spray**:  Oleoresin Capsicum Spray; an aerosol with small particles of crushed peppers suspended in a water-based solution.

**Passive Resistance**:  Verbal and/or physical refusal to comply or cooperate with (or respond to) an officer's lawful directions, but taking no or only minimal physical action to prevent an officer from placing the person in custody and taking control.  Examples include, but are not limited to, refusing to move or remaining stationary, and not moving when directed.

**Physical Control**:  The use of empty-hand or leverage-enhanced techniques, including transporters, take-downs, handcuffing, pain compliance measures, OC Spray and other chemical agents, and/or various striking techniques.

**Unnecessary Force**:  The application of force where there is no justification or authority for its use.

**Verbal De-escalation**:  An officer's spoken communication with a person to gain control of a situation, provide the person the opportunity to comply with lawful

directions or commands, or to distract the person from the focus of their anger. The goal of verbal de-escalation is the person's voluntary compliance.

**Verbal Direction**: Spoken communication of a lawful order for a person to perform a specific act.

## PROCEDURES

I.  **GENERAL GUIDELINES**

   A. Based on the totality of the circumstances officers, when practical, should attempt to gain control of a response to resistance encounter by using verbal de-escalation techniques. <u>A person's voluntary compliance is the desired outcome of any officer-person encounter</u>.

   B. In any response to resistance encounter, officers shall use only the amount of force objectively reasonable, based on the facts and circumstances known or perceived by the officer at the time force is employed, to overcome and control the actions of resistive persons.

   1. The reasonableness of the force employed must be judged from the perspective of a reasonable officer on the scene at the time of the incident and must allow for the fact police officers are often forced to make split-second judgments – in tense, uncertain and rapidly evolving circumstances – about the amount of force necessary in a particular situation.

   2. The test of reasonableness is not capable of precise definition or mechanical application.

   C. Officers shall only use Response to Resistance Options of Control/Force which are objectively reasonable to overcome resistance in order to accomplish lawful objectives, and officers are prohibited from using:

   1. Unnecessary force, or

   2. Excessive force.

   D. Officers are prohibited from using any force against a compliant person (i.e., a person who is following lawful orders and offers no passive resistance, active resistance, aggressive resistance, or aggravated aggressive resistance).

   E. This written directive is a guide to officers for selecting reasonable and legal Response to Resistance Options of Control/Force during verbal or physical encounters.

1. As a person's resistance level increases, an officer may have to increase the response option until resistance ceases or the officer is able to gain control of the person.

2. As soon as compliance is gained, officers must de-escalate their force response to an option objectively reasonable to maintain control of the person.

F. The guidelines in this written directive are intended for internal Department use only, and:

1. Do not create a higher legal standard of safety or care with respect to third parties, and

2. Are not to be applied in any civil or criminal proceeding.

G. A violation of this written directive will be grounds for administrative discipline only, while a violation of the law may be the basis for civil or criminal penalties.

H. The determination of whether or not an officer's response to resistance was objectively reasonable must be done on a case-by-case basis. Several considerations, including those outlined by the United States Supreme Court in the case of *Graham v. Connor* may be used in such a determination, including:

1. The type and severity of the incident or crime at issue,

2. The person posing an immediate threat to the officer or others,

3. The person's physical resistance to an arrest or other lawful detention,

4. The person fleeing from an arrest or other lawful detention,

5. The size, age, relative strength, skill-level, and physical condition (including injury or exhaustion) of the person and the officer,

6. The officer's level of training and experience,

7. The number of persons and/or number of officers on the scene,

8. The duration of the incident, specifically in relation to the physical resistance offered by the person,

    9. The time available to an officer to make a decision to use response to resistance levels of control/force,

    10. The person's proximity or access to weapons,

    11. Environmental factors and other exigent circumstances, and

    12. The officer's perceptions at the time the decision to use force was made.

  I. It is the responsibility of the Department to train each officer in Response to Resistance Force Options of Control/Force (see Section V).

## II. LESS-LETHAL FORCE GUIDELINES

  A. When faced with a non-deadly force situation, officers shall assess the incident to determine which response they believe will best bring the incident under control in accordance with the Response to Resistance Options of Control/Force (see section V).

  B. Officers are authorized to use Department-approved less-lethal force techniques, less-lethal weapons, and less-lethal firearms to:

    1. Protect themselves and other persons from physical harm,

    2. Restrain or subdue a person who is resisting lawful detention or arrest,

    3. Bring an unlawful situation under control, and

    4. Make a lawful arrest or detention and prevent escape.

  C. Officers deploying a less-lethal firearm, when practical, shall notify their supervisor prior to deployment.

  D. Only officers who have successfully completed a less-lethal firearms training course and maintain current proficiency in its use are authorized to use a less-lethal firearm.

## III. DEADLY FORCE GUIDELINES

  A. Officers may use deadly force only when they believe it is objectively reasonable to defend their life or the life of another person from an imminent threat of great bodily harm or death.

  B. When feasible, before discharging a firearm, officers should identify themselves and the intent to shoot.

C. Officers are strongly discouraged from discharging a firearm at or from a moving vehicle.

D. Officers are prohibited from discharging a firearm as a warning shot.

IV. **SHOOTING AN ANIMAL**

A. Officers may utilize their firearm to shoot an animal which represents an imminent threat to the public safety or as a humane measure when the animal is seriously injured when each of the following requirements is met:

1. Prior supervisory approval, unless the animal is an imminent threat to the officer or another person.

2. Animal control officers are not available within a reasonable amount of time.

3. The animal can be shot without risk to the public.

4. The officer is authorized to carry, and is currently qualified with, the firearm to be used.

B. Whenever an officer takes actions as described above, the involved officer or their supervisor is responsible for promptly notifying the watch commander.

V. **RESPONSE TO RESISTANCE – CONTROL/FORCE OPTIONS**

A. Officers may exercise a variety of Response to Resistance Control/Force Options (see subsection D below) during an encounter with a resistive person, and may use any control/force option that is objectively reasonable to control a person or situation.

B. Officers are responsible for modifying and controlling their responses in relation to the amount of resistance offered by a person.

C. Officers are responsible for being aware of the option to de-escalate to the point of disengaging contact with a person if circumstances indicate that such action is appropriate (e.g., when the officer has met a superior resistance and needs to await the arrival of backup officers).

D. When response to resistance is necessary, officers shall assess each incident, based on policy, training and experience, to determine which response to resistance control/force option is believed to be appropriate for

the situation and could bring it under control in a prudent manner.  Response to resistance control/force options include:

1. <u>Low Level Control Options</u>

    a. The level of control necessary to interact with a person who is displaying *passive resistance* (e.g., refusing to move under their own power) and in some cases, *active resistance* (e.g., bracing or tensing).

    b. These control options are not intended to cause injury and has a low probability of causing injury.

    c. These control options include, but are not necessarily limited to, the officer's presence, verbal direction or verbal commands, guiding or assisting touches, and handcuffing or utilization of other Department-approved restraint devices, and:

        1) The utilization of certain physical control techniques (i.e., transporters, take-downs) only when the officer believes it is objectively reasonable for the situation and could bring it under control in a prudent manner.

        2) The utilization of OC Spray only when the officer reasonably believes the use of transporters and take-downs would:

            a) Be ineffective, or

            b) Induce the person to resist more aggressively.

2. <u>Less-Lethal Force</u>

    a. The force option necessary to compel compliance by a person displaying *aggressive resistance* (e.g., punching) and in some cases, *active resistance* (e.g., walking or running away).

    b. These force options are neither likely to cause death nor intended to cause death, but have the potential to result in physical harm.

    c. These force options include, but are not necessarily limited to, the utilization of physical control techniques, OC Spray, CEWs, less-lethal firearms, impact weapons/batons, canine apprehension, and the PepperBall weapon system.

3. <u>Deadly Force</u>

   a. The force option necessary to combat a person's *aggravated aggressive resistance* which is likely to cause death or great bodily harm to the person.

   b. Deadly force can also result from a force option being improperly applied.

   c. These force options include, but are not necessarily limited to, discharging a firearm at a person or intentional strikes with an impact weapon delivered to the head, neck, spine, throat, or groin.

E. In addition to the response to resistance options of control/force protocols in subsection D above, the following weapon utilizations are applicable in response to resistance encounters:

   1. <u>Conducted Electrical Weapons (CEW)</u>

      a. Officers are prohibited from using a CEW to overcome *passive resistance*.

      b. Officers may use a CEW to overcome a person's *active resistance* in arrest, custodial, and detention situations, only when:

         1) The officer reasonably believes the person has the apparent ability to physically harm any person, or

         2) The person has taken some overt physical action in an attempt to flee or escape.

      c. Officers are responsible for adhering to the protocols in General Order 7 (Conducted Electrical Weapons) in the utilization of a CEW.

   2. <u>Impact Weapons/Batons</u>

      a. Officers may use impact weapons/batons to strike large muscle groups (e.g., legs, buttocks, upper arms, forearms) to overcome *active resistance*, when the person is making an apparent effort to escape by pushing or pulling away, running away, or physically defeating an officer's attempts to get close.

      b. Officers should not use impact weapons/batons to strike a person when the *active resistance* consists only of bracing or tensing, unless

   they believe such use is objectively reasonable based upon the circumstances.

   c. Officers may use impact weapons/batons to thrust/jab a person in the hands, joints, abdomen, or muscular portions of the back to overcome *aggressive resistance*.

3. Canine Application

   a. A Department canine shall not be used to physically apprehend a person when the *active resistance* consists only of bracing or tensing.

   b. A Department canine may be used to physically apprehend a person engaged in, at a minimum, *active resistance* when the officer believes it is objectively reasonable (using the same considerations in subsection I H above).

   c. The mere presence of a Department canine (no bite or apprehension) is not less-lethal force.

4. Less-Lethal Bean-Bag Shotgun (a less-lethal firearm)

   a. Officers may use bean-bag rounds on a person who is engaged in *active resistance* by fleeing, running away, or taking measures to not allow the officer to get close. In such situations, the target areas on the person are the legs and buttocks.

   b. Officers shall not use bean-bag rounds to strike a person when the *active resistance* consists only of bracing or tensing.

   c. Officers may use bean-bag rounds on a person who is engaged in *aggressive resistance*. In such situations, the target areas on the person are the legs, buttocks, abdomen, shoulders, and back (excluding the spine).

   d. Officers may use bean-bag rounds on a person who is engaged in *aggravated aggressive resistance*. In such situations, the target area on the person is the entire body, including the groin, spine, neck, and head as long as the use of deadly force is objectively reasonable.

   e. Officers are responsible for adhering to the protocols in General Order 70 (Firearms/Less-lethal Firearms) in the utilization of a less-lethal bean-bag shotgun.

5. <u>Firearms</u>

   a. Firearms may be drawn by officers when they reasonably believe it may be necessary to prevent great bodily harm to themselves or another person, or to defend their lives or the life of another person.

   b. The pointing of a firearm at a person is not the application of deadly force and only becomes deadly force when the firearm is discharged.

   c. Officers are responsible for adhering to the protocols in General Order 70 (Firearms/Less-lethal Firearms) in the utilization of a firearm.

VI. **REPORT OF INJURY AND MEDICAL AID PROTOCOLS**

   A. When an officer, the person upon whom force was used, or another person is injured or complains of injury after a response to resistance encounter, officers shall provide appropriate medical aid to include:

   1. A visual and verbal assessment of the person, and

   2. Rendering first aid and/or summoning emergency medical services (EMS).

   B. The procedures in subsection A above are applicable even if the response to resistance encounter was not the cause of the need for medical aid.

   C. A sworn supervisor shall respond to all response to resistance encounters where a person is injured or complains of injury, or an officer or citizen is injured as a result of the encounter.

   1. The supervisor should attempt to locate and interview any witnesses to the encounter.

   2. The supervisor should determine if any video footage of the encounter exists and take lawful steps to obtain it.

   3. These steps are considered part of a basic fact-finding investigation to provide the supervisor with all pertinent information necessary to review the Response to Resistance Report.

VII. **RESPONSE TO RESISTANCE REPORT**

   A. A Response to Resistance Report shall be completed when officers:

   1. Apply any technique considered deadly force (e.g., strikes to the spine, throat or eyes).

2. Respond to resistance through any technique or action that results in, is likely to result in, or is alleged to have resulted in, the injury or death of another person.

3. Discharge a firearm or a less-lethal firearm other than on the firing line during Department sanctioned firearms training or Department sanctioned recreational activities.

4. Respond to resistance using any less-lethal weapon (e.g., impact weapon/baton, CEW, OC Spray or other chemical agent, canine bite/apprehension).

5. Respond to resistance using a physical control technique.

6. Remove their handgun from the holster, deploy their shoulder firearm, or deploy their less-lethal firearm for use, AND there is a subsequent encounter with a person involving one or more of the following:

    a. The firearm is pointed at the person.

    b. The firearm is visible to the person while the officer is giving verbal commands for compliance.

    c. The muzzle of a firearm is "swept" across any person.

B. The following guidelines apply when documenting injuries associated with the application of a CEW in the Response to Resistance Report:

1. Probe sites or drive-stun sites are not considered an injury.

2. The term "injury" shall only apply to any subsequent harm or wound resulting from the application of a CEW.

C. Regardless of how many officers are involved in a single response to resistance encounter, <u>only one Response to Resistance Report will be completed</u>, and the officer(s) involved shall adhere to the following:

1. One officer will be designated to complete the Response to Resistance Report, and the officer will:

    a. <u>Only</u> complete the check-box and fill-in-the-blank portions of the report, and electronically sign it, and

    b. <u>Not</u> complete the narrative section of the report, but instead write a short message referring to the offense report(s) for details of the incident.

  2. Each officer involved in the incident who used a level of control/force, including the officer designated to complete the Response to Resistance Report, is responsible for completing an offense report (original or supplement, as appropriate) addressing the person's resistance and their individual level of control/force.

D. When required to complete a report as outlined in subsections A and C above, officers shall submit the report to their supervisor before the end of the tour of duty.

  1. If the officer's supervisor is not available, the officer shall submit the Response to Resistance Report or offense report to another supervisor before the end of the tour of duty.

  2. If an officer involved in the incident is incapacitated due to injury, or otherwise cannot promptly complete the required report, this requirement shall be modified as determined by the officer's chain of command.

## VIII. SUPERVISORY RESPONSIBILITIES

A. It is the supervisor's responsibility to investigate each documented response to resistance application, to include:

  1. Reviewing the corresponding Response to Resistance Report and each related offense report,

  2. Linking each related offense report to the Response to Resistance Report, and

  3. Making a recommendation on whether or not the officer's response to resistance application was objectively reasonable.

B. In reviewing the Response to Resistance Report, supervisors shall:

  1. Document their review of all available reports, pictures, and videos (including AVR recordings) in the Response to Resistance Report comments section, and

  2. Determine if the officer's actions were objectively reasonable and include the recommendation of "justified" or "not justified" in the Response to Resistance Report comments section.

    C. Completed Response to Resistance Reports shall be forwarded through the officer's chain of command to the appropriate Division Captain.

    D. Anytime a response to resistance encounter involves an officer-involved shooting or other action resulting in death or serious injuries, the appropriate supervisor is responsible for implementing the protocols of General Order 63 (Officer Involved Action Resulting in Serious Injury or Death).

IX. **COMMANDER AND LEGAL ADVISOR RESPONSIBILITIES**

    A. After reviewing and signing the Response to Resistance Report, the Division Captain is responsible for forwarding the report as follows:

        1. Reported injuries: to the Legal Advisor, or

        2. No reported injuries: to the Internal Affairs Unit.

    B. The Legal Advisor is responsible for reviewing each Response to Resistance Report with reported injuries and, after the review, forwarding the report to the Internal Affairs Unit.

X. **INTERNAL AFFAIRS UNIT RESPONSIBILITIES**

    A. The Internal Affairs Unit is responsible for conducting a compliance review and/or an investigation of each response to resistance encounter to determine:

        1. Compliance with Department policies and protocols,

        2. The clarity and effectiveness of applicable policies, and

        3. The adequacy of Department training to properly address the situation encountered.

    B. All findings of policy violations or training inadequacies shall be reported to the appropriate unit for resolution or discipline.

        1. If the initial review of a Response to Resistance Report indicates the possibility of unnecessary force or excessive force, the IAU investigator reviewing the report shall notify the IAU Sergeant or the IAU Commander, and:

   a. The IAU Sergeant or the IAU Commander is responsible for promptly notifying the Chief of Police or his designee and providing all pertinent information, and

   b. The Chief of Police or his designee shall make the decision if an investigation will be conducted by the IAU. Any such investigation will be conducted in compliance with IAU policies.

2. If the initial review of the Response to Resistance Report indicates the existence of a training inadequacy, the IAU investigator reviewing the report shall promptly notify the IAU Sergeant.

   a. The IAU Sergeant shall promptly notify the IAU Commander and the Chief of Police.

   b. The IAU Sergeant will then promptly notify the Training Coordinator, inform them of the training deficiency, and provide all pertinent information to allow the Training Coordinator to correct the deficiency.

C. The IAU Commander, in conjunction with the Training Coordinator, is responsible for producing a quarterly report for the Chief of Police on response to resistance encounters to ascertain policy compliance, policy and/or training needs, and to determine trends (resistance offered and officer responses).

## XI. TRAINING SECTION RESPONSIBILITIES

A. The Training Section is responsible for reviewing each response to resistance encounter to:

   1. Determine resistance offered, officer responses, and the results of the encounter, and

   2. When needed, modify response to resistance training to address changing resistance trends, and/or deficiencies in response techniques.

B. The Training Section is responsible for providing on-going response to resistance training in the Department's annual in-service training program.

C. When notified by the IAU Sergeant of the existence of a training inadequacy in regards to a Response to Resistance Report, The Training Coordinator shall obtain all the pertinent information to review the incident.

D. The Training Coordinator is responsible for determining if a training inadequacy exists.

    1. If a training inadequacy exists, The Training Coordinator, through their chain of command, shall update the Chief of Police or designee in regards to the actions taken to correct the deficiency.

    2. If no training inadequacy exists, the Training Coordinator, through their chain of command, shall explain this determination to the Chief of Police or designee.

E. The Training Coordinator, in conjunction with the IAU Commander, is responsible for producing a quarterly report for the Chief of Police on response to resistance encounters to ascertain policy compliance, policy and/or training needs, and to determine trends (resistance offered and officer responses).

History:  issued 07/28/1986, revised 03/01/1993, 07/01/1993, 01/12/1996, 04/15/1998, 01/19/1999, 10/29/2001, 10/01/2007, and 09/30/2010.