UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO.:4:22-cv-00060-MW-MAF

**EILEEN PARKER**, as the Personal
Representative of **THE ESTATE OF
AARON MICHAEL PARKER**, deceased,

    Plaintiff,

v.

**CITY OF TALLAHASSEE**, a
political subdivision of the State of
Florida; **DAVID NORTHWAY**, Individually;
**STEPHEN DEUTSCHMAN**, Individually;
**CLIFFORD CROUCH**, Individually;
**DOUGLAS KUTCHERA**, Individually;
**TRENT ROBERTS**, Individually;
**CHRISTOPHER ROTH**, Individually;
**RUSSELL SCHNEIDER**, Individually;
and **STEPHEN SHIELDS**, Individually,

    Defendants.
_____/

### RESPONSE TO DEFENDANT CITY OF TALLAHASSEE'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

**COMES NOW**, the Plaintiff, EILEEN PARKER, as Personal Representative of THE ESTATE OF AARON MICHAEL PARKER, and hereby files this Response to the Defendant City of Tallahassee's Motion To Dismiss (ECF No. 26), and in support thereof states as follows:

1

# I. SUMMARY OF THE ALLEGATIONS AGAINST THE CITY

1. Defendant, City of Tallahassee, hereinafter (TPD) or CITY, has moved to dismiss Count I of the Second Amended Complaint (ECF No. 22). The City has attached documents or exhibits to their Motion to Dismiss, and the Plaintiff moves to strike said attachments, as the Court is to look only at the four corners of the Complaint and not consider evidence outside the Complaint, and the Plaintiff has cited caselaw below to support this proposition.

2. Contrary to the assertion made by the CITY, namely that the Plaintiff has failed to sufficiently allege constitutional violations against the individual officers, and therefore the CITY is not liable, the Plaintiff has alleged more than sufficient facts in the 42 page Second Amended Complaint (ECF No. 22) filed against the individual officers, which leads to the inherent liability on the part of the CITY. Plaintiff will further address those arguments when it responds to the individual officers' Motions to Dismiss. The summarized highlights of the allegations continued in the Second Amended Complaint (ECF No. 22) against the individual officers include: (1) the individual officers tasing the decedent repeatedly without lawful justification; (2) the individual officers utilizing an "excited delirium pin" upon the decedent; (3) the individual officers holding the decedent in a fixed position on the ground so that he could not breathe for nearly fifteen minutes, causing the decedent to expire; while also (4) demanding that EMT's repeatedly inject the

decedent with medication, causing the decedent to become overmedicated and to expire as a result; (5) and the plethora of other conduct outlined in the general allegations of the Second Amended Complaint evidencing constitutional violations committed by the individual officers in this case.

3. Specifically in regards to Defendant CITY, the Plaintiff in the general allegations section of the Amened Complaint has alleged that the Tallahasee: (1) created an unconstitutional policy when it trained officers to use the "excited delirium" pin; (2) failed to conduct a legitimate internal affairs investigation, failing to watch the video of the incident when reviewing the offices' use of force thereby ratifying the officers conduct; (3) made Defendant, CLAYTON, the final policymaker for the City of Tallhassee, who ratified the conduct of the officers; (4) failed to implement the PERF[1] recommendations regarding the TPD use of force policy; (5) failed to implement the PERF recommendations regarding Mental Health First Aid and training on the signs of mental health and or addiction issues; (6) failed to implement the PERF recommendations regarding the TPD ret-raining all officers on the use of force, including the use of Tasers; (7) failed to make any corrective

---

[1] Police Executive Research Forum ("PERF")
In June 2015, the City of Tallahassee, Florida contracted with the Police Executive Research Forum (PERF) to provide a review and assessment of the Tallahassee Police Department's (TPD) policies and procedures in six areas: (1) Use of force; (2) Incident report writing; (3) The department's field training program; (4) Internal affairs investigations and complaint resolution; (5) High-risk operations; and (6) Special investigations and confidential informants. The study was requested by the Chief of Police to ensure that the policies of the Tallahassee Police Department reflect best practices, following several high-profile police incidents over the last several years.

actions suggested by the PERF report created as a result of the 2011 TPD in-custody death of Kevin Campbell, which predates the incident at issue in this case; (8) failed to otherwise create constutional policies, failed to hire qualified officers; and failed to properly train those officers that it did hire.

4. In addition to these allegations contained in the facts section of the Complaint, the Plaintiff has specifically alleged the following against Defendant, CITY, in Count I of the Second Amended Complaint (ECF No. 22), which states:

> 59. Plaintiff re-alleges the Common Allegations of Facts above as fully set forth herein.
>
> 60. Plaintiff is entitled to relief against Defendant CITY pursuant to 42 USC 1983 for violation of the Fourth Amendment because the CITY, in its policies and procedures, supervision, training, and discipline, hiring, and retention, or lack thereof, and trained the named Defendant officers the excited delirium pin, and other techniques described above which were dangerous and deliberately indifferent to the known risks of serious harm to AARON MICHAEL PARKER or other persons in like circumstances. The TPD also ratified the conduct of the named Defendant Officers herein and, as such, are liable pursuant to 42 USC 1983.
>
> 61. The TPD did not train Defendants NORTHWAY, SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, or CROUCH on de-escalating crises with mentally ill or intoxicated citizens. The TPD also ratified the officers' use of excessive force, including the tasing, the excited delirium pin, and the administration of drugs upon AARON MICHAEL PARKER. The TPD failed to properly train the Defendant officers on use-of-force, dealing with mentally ill or intoxicated citizens, or

appropriate physical control techniques causing AARON MICHAEL PARKER'S death.

62. The TPD failed to properly train its officers on tasers on individuals such as AARON MICHAEL PARKER, causing AARON MICHAEL PARKER'S death.

63. The TPD ratified the actions and conduct of the individually named officers, thereby making their actions the official TPD policy.

64. The TPD created an illegal policy, training officers to use the "excited delirium pin" for use on those believed to be suffering from excited delirium, a highly debated medical condition. TPD knew or should have known that excited delirium is not a widely accepted medical condition; instead, they created an experimental technique and then trained its officers to render medical assessments and utilize the "excited delirium pin." The policies of the TPD violated AARON MICHAEL PARKER'S Constitutional rights.

65. By the acts described herein, Defendant CITY deprived AARON MICHAEL PARKER of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution.

66. Plaintiff has been forced to retain counsel and is entitled under 42 USC § 1988 to reasonable attorney's fees and costs.

*See* ECF No. 22.

## II. Legal Analysis

5. In ruling on a motion to dismiss, this Court must view the Complaint in the light most favorable to Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the Complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The Court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

6. In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the rule to be applied is that "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman*

*Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Instead, the Complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.* (internal citation and quotation omitted). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

### III. Municipal Liability under 42 U.S.C. § 1983

7. The Plaintiff has sued CITY and as alleged in the Amended Complaint that CITY: (1) created an unconstitutional policy when it trained officers to use the "excited delirium" pin; (2) failed to conduct a legitimate internal affairs investigation when the final decisionmakers failed to even watch the video of the incident when reviewing the officers' use of force thereby ratifying the officers conduct; (3) made Defendant, CLAYTON, the final policymaker for Tallhassee, who ratified the conduct of the officers as alleged in the Amended Complaint; (4) failed to implement the PERF recommendations regarding the TPD use of force policy; (5) failed to implement the PERF recommendations regarding Mental Health First Aid and training on the signs of mental health and or addiction issues; (6) failed to implement the PERF recommendations regarding the TPD retraining all officers on the use of

force, including the use of Tasers; (7) failed to make any corrective actions suggested by the PERF report created as a result of the 2011 TPD in-custody death of Kevin Campbell, which predates the incident at issue in this case; (8) failed to otherwise create constutional policies, failed to hire qualified officers; and failed to properly train those officers that it did hire.

8.  In *Kimbrough v. City of Cocoa,* 2006 WL 2860926, 20 Fla. L. Weekly Fed. D. 385 (Md. Florida 2006), the Court, in denying the Defendants' Motion for Summary Judgment, considered similar constitutional violations to those in this case. In *Kimbrough,* the Court stated:

> A claim for relief under 42 U.S.C. § 1983 ("§ 1983") requires that Plaintiff allege a "deprivation of an actual constitutional right." *McElligott v. Foley,* 182 F.3d 1248, 1254 (11th Cir.1999). "It is well settled that the deliberate indifference to serious medical needs of prisoners" constitutes a violation of the 8th Amendment to the United States Constitution.3 *Id.* (internal citations omitted). Therefore, to establish a claim under § 1983, a Plaintiff must allege (1) a serious medical need, (2) deliberate indifference to that need by Defendant, and (3) a causal connection between Defendant's deliberate indifference and Plaintiff's injuries. *See Hatten v. Prison Health Services, Inc.,* 2006 U.S. Dist. LEXIS 65143, *11 (M.D.Fla. Sept. 13, 2006).
>
> ***1. Deliberate Indifference***
> PHS contends that Plaintiffs have failed to allege facts that would establish deliberate indifference to Kimbrough's serious medical needs. "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere

8

negligence." *McElligott* at 1255. Examples of deliberate indifference include, *inter alia,* (1) when an official knows that an inmate is in serious need of medical care and fails or refuses to obtain medical treatment for the inmate, (2) when a decision is made to take an easier, less efficacious course of treatment, (3) when the need for medical care is obvious and the care that is given is so cursory as to amount to no care at all, or (4) when there is an unjustified delay in providing medical care for a known serious condition. *See id.* "The medical needs of inmates need not be considered 'life threatening' to be considered serious." *Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir.1989) (internal citations omitted).

In this case, PHS staff was well aware of Kimbrough's injuries. Kimbrough was complaining of pain in his leg and difficulty walking from the moment he was admitted to BCDC. He was presented to the medical staff several times with a badly bruised and swollen eye, and indicated that he thought his leg and ribs were broken. In Response to Kimbrough's complaints, Norgell ordered x-rays because she thought Kimbrough might have an infection or there may be a foreign body in his leg, however, she did not specify when the x-rays were to be taken and they never were. (See Norgell Depo. at 91, 117-20). PHS staff members were also aware that Kimbrough was having difficulty passing urine and had blood in his urine. PHS employee Wood admitted in her testimony that such symptoms can indicate at least three different serious medical conditions. Even to a lay person, it is obvious that blood in the urine is an indication of a serious medical need. It can hardly be disputed that Plaintiffs have presented sufficient evidence of subjective knowledge of Kimbrough's serious medical need.

Plaintiffs next allege that Defendants disregarded Kimbrough's serious medical condition because they failed to provide adequate treatment or to send him to a hospital. Defendants, however, contend

that Kimbrough was seen several times by medical staff and provided treatment each time.

A reasonable jury could find that the medical treatment provided was so cursory as to amount to no treatment at all. The facts as alleged by the Plaintiffs show that the staff made several attempts to diagnose Kimbrough, but never followed through on those efforts. Latier and Norgell examined Kimbrough's leg, but only the front of his thigh, while he was seated. Norgell ordered an x-ray, but the x-ray was never taken. Norgell ordered a urinalysis and Wood obtained a urine sample, but never looked at it under a microscope and never reported the findings to Norgell. Wood stated that she suspected Kimbrough was suffering from compartment syndrome, which she admits is a serious medical condition for which an inmate should be sent to a hospital, but she never sent Kimbrough to the hospital or even communicated these suspicions to Norgell. (Wood Depo at 153). It can hardly be said that anything done by the PHS staff can be considered "treatment" if, as Plaintiffs' expert witness Dr. Joe Godenson ("Godenson") opines, it can barely be considered adequate evaluation. (Godenson May Depo. at 125-26).4 The only "treatment" PHS employees offered was to prescribe Tylenol to a man complaining of broken ribs and a broken leg and Zantac for complaints of vomiting blood and bloody stool. Tylenol (acetaminophen) is an over-the-counter medication for relief of *minor* pain, with a recommended dose of 650mg every 4 to 6 hours.5 Kimbrough was prescribed 650mg every *twelve* hours, which would offer little if any comfort to a patient with his symptoms. Zantac (ranitidine) is an over-the-counter medication used to treat ulcers, indigestion, heartburn, etc., it is not indicated for serious gastrointestinal problems (i.e vomiting blood or bloody stool). The use of these drugs to treat Kimbrough's symptoms is so cursory as to amount to no treatment at all.

Finally, PHS asserts that none of the actions complained of by Plaintiffs amount to more than mere negligence.

However, Godenson testified that, in his opinion, these actions (or inactions) by PHS staff with regard to the treatment of Kimbrough constitute deliberate indifference. (Godenson May Depo. at 135-36). The final determination will be left to a jury.

### *2. Custom or Policy*

PHS correctly asserts that the doctrine of respondeat superior does not apply to claims arising under § 1983. *Engelleiter v. Brevard County Sheriff's Dept.,* 290 F.Supp.2d 1300, 1308 (M.D.Fla.2003). PHS then argues that to establish a claim against it, Plaintiff must show that the violation of Kimbrough's constitutional rights was the result of a "policy" or "custom" maintained by PHS. PHS contends that Plaintiffs have failed to produce evidence of a custom or policy of PHS that caused Kimbrough's injuries.

PHS, however, has ignored a large body of case law in its argument. While it is true that § 1983 liability cannot be imposed under a theory of respondeat superior, PHS may still be liable under § 1983 for the single act of a final policymaker. *See Mandel* at 791-2. In fact, PHS' liability under § 1983 may be established in one of four ways:

(1) the constitutional deprivation was caused by a policy or custom of the local governmental entity, *or* (2), the final policymakers of the local governmental entity acted with deliberate indifference to a constitutional deprivation, *or* (3) the final policymakers of the local governmental entity delegated their authority to a subordinate who, in turn, caused a constitutional deprivation, *or* (4) the final policymakers of the local governmental entity ratified a constitutionally impermissible decision or recommendation of a subordinate employee. *Sherrod v. Palm Beach County School District,* 424 F.Supp.2d 1341, 1344 (S.D.Fla.2006) (emphasis added).

*See id.*

Similarly, in this case, the Defendant OFFICERS knew or should have known their conduct would deprive AARON MICHAEL PARKER of the ability to breathe given the extended period that pressure was applied to his prone body (Defendants combined weights); Defendant OFFICERS disregarded the risk to AARON MICHAEL PARKER for such a significant period as to amount to more than mere negligence. A reasonable jury could find that the medical treatment provided was superficial at best. The force used by the Defendant OFFICERS' was considered justified under the CITY'S policy, which provided for the practice of an "excited delirium pin," allowing officers to render a medical opinion, justifying the use of "the pin" as they see necessary. The custom resulted in the death of AARON MICHAEL PARKER.

9. In the instant case, the Plaintiff has alleged that the CITY created an illegal policy and or practice when it (1) trained officers to use the excited delirium pin and to hold the decedent on the ground for as long as fifteen (15) minutes;[2] (2)

---

[2] The Plaintiff has alleged that excited delirium is not a real medical condition recognized by the American Medical Association and therefore any CITY policy created around a non-existent medical condition is unreasonable. For far too long, sedatives like ketamine and misapplied diagnoses like 'excited delirium' have been misused during law enforcement interactions and outside of medical settings" said AMA President-elect Gerald E. Harmon, M.D. "As physicians and leaders in medicine, it is our duty to define the medical terms that are being used to justify inappropriate and discriminatory actions by non-health care professionals. The adoption of this policy represents an urgent step forward in our efforts to remove obstacles that interfere with safe, high quality medical care – and makes clear that the AMA will continue to aggressively confront all forms of racism or police violence against our patients in marginalized and minoritized communities."

failed to change any policies pursuant to the PERF recommendations made before the incident at issue in this case; (3) trained officers to have EMT's inject the decedent with various drugs during the incident, causing the decedent to expire; (4) when TPD made Paul Osborne or CLAYTON the final policymaker, and they ratified the conduct of the officers as described in the Complaint on behalf of TPD and the CITY. Plaintiff has also alleged that the CITY'S unconstitutional policies and practices, the CITY'S failure to train, and the CITY's ratification of the conduct of the individual officers all led to the decedent's death.

10. Plaintiff has filed a 42-page Amended Complaint (ECF No. 22) which contains all of the necessary allegations required for Plaintiff to proceed under Count of the Amended Complaint against the CITY. Plaintiff is not trying to proceed against the CITY under a theory of *respondeat superior*.

This Honorable Court should apply the above-cited case law and find that the Plaintiffs' Amended Complaint states a cause of action and deny Defendant CITY'S Motion to Dismiss and allow this case to proceed.

**WHEREFORE**, Plaintiff, EILEEN PARKER, as Personal Representative of THE ESTATE OF AARON MICHAEL PARKER, respectfully requests this Court deny all Defendant's Motion to Dismiss and Order the Defendants to respond accordingly.

Dated this 24th day of May 2022.

Respectfully Submitted,

*/s/ John Vernon Moore /s/*
**JOHN VERNON MOORE, ESQUIRE**
Florida Bar No.: 105403
***The Law Office of John Vernon Moore, P.A.***
700 N. Wickham Road, Suite 206
Melbourne, Florida 32935
Tel. (321) 529-7777
Fax (321) 529-2289
Email: CourtDocs@JMooreLegal.com
Secondary Email: John@JMooreLegal.com
*Attorney for Plaintiff*

*/s/ Bryan D. Savy /s/*
**BRYAN D. SAVY, ESQUIRE**
Florida Bar No.: 12442
997 S. Wickham Road
West Melbourne, Florida 32904
Tel. (321) 728-4911
Fax (321) 728-4870
Email: bsavy@brosslawoffice.com
*Attorney for Plaintiff*

## WORD COUNT CERTIFICATION

This document complies with word limits set forth in N.D. Fla. Local Rule 7.1(F) and contains 3,324 words, which includes the headings, footnotes, and quotations, but does not include the case style, signature block, or Certificates of Word Count and Service.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 24th day of May 2022, a true and correct copy of the foregoing was electronically filed in the US District Court, Northern District of Florida, using the CM/ECF system, which will send a notice of the electronic filing to all counsel of record.

<table>
<tr><td>

s/Jennifer M. Painter  
Florida Bar Number: 110966  
Assistant City Attorney  
City Attorney's Office  
300 South Adams Street, Box A-5  
Tallahassee, FL 32301  
Phone: (850) 891-8554  
Fax: (850) 891-8973  
Hannah.Monroe@talgov.com  
*Attorney for Defendant City of Tallahassee*

</td><td>

s/ Michael P. Spellman  
Florida Bar Number: 0937975  
SNIFFEN & SPELLMAN, PA.  
123 North Monroe Street  
Tallahassee, Florida 32301  
Telephone: (850) 205-1996  
Facsimile: (850) 205-3004  
mspellman@sniffenlaw.com  
*Attorneys for the Individual Defendants*

</td></tr>
</table>

/s/ *John Vernon Moore* /s/  
**JOHN VERNON MOORE**

*/s/ Bryan D. Savy /s/*  
**BRYAN D. SAVY**