EILEEN PARKER, as Personal
Representative of the Estate of
AARON MICHAEL PARKER,
deceased,

 Plaintiff,

v.       CASE NO.: 4:22-cv-00060-MW-MAF

THE CITY OF TALLAHASSEE,
A political subdivision of the
State of Florida;
DAVID NORTHWAY, Individually;
STEPHEN SHIELDS, Individually,
STEPHEN DEUTSCHMAN, Individually;
DOUGLAS KUTCHERA, Individually;
TRENT ROBERTS, Individually;
CHRISTOPHER ROTH, Individually;
RUSSELL SCHNEIDER, Individually;
ROBERT CLAYTON, Individually and
CLIFFORD CROUCH, Individually;

 Defendants.
_____/

## RESPONSE TO DEFENDANT OFFICERS'
## MOTION TO DISMISS

  **COMES NOW**, EILEEN PARKER, as Personal Representative of

the THE ESTATE OF AARON MICHAEL PARKER, and hereby files this:

Response to the Defendant Officers Motion to Dismiss (EFC 34), and in

support thereof states as follows:

1

# I. <u>SUMMARY OF THE ALLEGATIONS AGAINST THE OFFICERS</u>

1. The Defendants have moved to dismiss Count II through Count XVIII of the Amended Complaint (EFC 34). The allegations against each of the eight individual Defendants are a single count of excessive force and a single count of deliberate indifference to AARON MICHAEL PARKER'S medical needs, each alleged in a separate count per officer and a general count against all named officers for failing to intervene. AARON MICHAEL PARKER, who had no illegal drugs in his system, was tased and pinned, which caused AARON MICHAEL PARKER to pass away.

Defendants have moved to dismiss the Complaint, claiming the Second Amended Complaint is an impermissible shotgun pleading and that there are insufficient facts pled in the Second Amended Complaint to support the claim made in each count. Plaintiff has alleged more than sufficient facts to support the claims made against each Defendant.

2. Contrary to the assertion made by the Defendants, namely that Plaintiff has failed to sufficiently allege constitutional violations against the individual officers, Plaintiff has alleged more than sufficient facts in the forty (42) page Second Amended Complaint. The summarized highlights of the allegations contained in the Second Amended Complaint against the individual officers include that the individual officers: (1) tased AARON

MICHAEL PARKER and or allowed AARON MICHAEL PARKER to be tased repeatedly without lawful justification; (2) utilized an unfounded, but adopted medical technique known by Tallahassee Police Department as the "excited delirium pin" upon AARON MICHAEL PARKER; and (3) held AARON MICHAEL PARKER in a fixed position on the ground so that he could not breathe for over fifteen minutes. All of these actions caused AARON MICHAEL PARKER to expire. A plethora of other conduct evidencing constitutional violations committed by the Defendants is cited in the general allegations of the Second Amended Complaint.

3. Specifically, the Plaintiff alleged the following in the general allegations section of the Amended Complaint:

> 23.   At all times that NORTHWAY tased AARON MICHAEL PARKER, there was no lawful or legal justification for the first, second, or third tasing in quick succession of AARON MICHAEL PARKER. In fact, in less than four (4) minutes of arrival, Defendant NORTHWAY tased AARON MICHAEL PARKER repeatedly, who was initially standing behind and close to the ambulance, causing him to become incapacitated and to fall to the ground. There was no legal or lawful justification for using the taser upon AARON MICHAEL PARKER.
>
> 24.   Defendant Officer CHRISTOPHER ROTH then arrived at the scene at 10:50 p.m. Next, Defendant Officer STEPHEN DEUTSCHMAN arrived on the scene at around 10:51 p.m.
>
> 25.   At around 10:54 p.m., AARON MICHAEL PARKER, AARON MICHAEL PARKER, was manually restrained by the named individual TPD officers and in a prone position and no longer a threat to anyone.

26.     All of the named individual officer Defendants', except NORTHWAY, continued to press their entire weight on top of AARON MICHAEL PARKER for approximately 15 minutes. At about 10:54 p.m., the named individual officers placed AARON PARKER into the Excited Delirium pin. The excited delirium pin created a situation where all of the individual officers, except NORTHWAY, used their body weight, on top of AARON MICHAEL PARKER, at the 5 points of his body and on his torso, causing positional for over 10 minutes and as long 15 minutes, causing asphyxiation and rhabdomyolysis, all contributing to AARON MICHAEL PARKER'S death. AARON MICHAEL PARKER moaned, cried out for help, gasped for air; any reasonable officer knew or should have known that this act would be

27.     AARON MICHAEL PARKER expired while in the excited delirium pin described above. Any reasonable officer knew or should have known it violated AARON MICHAEL PARKER's right to be free from illegal and excessive use of force.

28.     The TPD created, condoned, and the named officers utilized the "excited delirium pin." Plaintiff alleges that excited delirium is not a legitimate medical condition and therefore further alleges that the policy created based upon excited delirium is unconstitutional.

29.     The individual officers demanded that the EMTs on the scene administer more medications to AARON MICHAEL PARKER as they lay atop him in the position described above for at least fifteen minutes, causing AARON MICHAEL PARKER to expire.

30.     During the medication administration and all times after approximately 10:55 p.m., AARON MICHAEL PARKER was not a threat, nor had he been before that. There was no legal justification for the excessive force used by the individual officer Defendants as described herein.

31.     The individual officers used excessive force by employing the "excited delirium pin" and position asphyxiation before, during, and after the administration of sedative drugs by paramedics until AARON MICHAEL PARKER was unresponsive, cold, showing no sign of eye movement, no verbal response, and no motor responses, and had expired.

32.     An LCSO helicopter footage (using military time) shows at 20:52; Defendant NORTHWAY can be seen crossing W. Tennessee Avenue to the median where AARON MICHAEL PARKER is lying down in the center of the median, naked.

33.     At 22:54, the video shows AARON MICHAEL PARKER walking out into the street briefly and returning and lying face down on the median until the paramedics arrive on the scene about 22:54.

34.     The LCSO helicopter footage then shows AARON MICHAEL PARKER standing directly behind the ambulance, which is blocking the left lane (far westbound travel lane) with its position and lights. AARON MICHAEL PARKER does not move; he does not walk or leave his standing position behind the ambulance in the moments leading up to Defendant NORTHWAY deploying his taser into AARON MICHAEL PARKER. At the time, AARON MICHAEL PARKER was unarmed and not a threat or resisting that necessitated the use of any level of force.

35.     At 22:57:10, on the video, the radio notes that all travel lanes are now blocked; despite this, at approximately 22:57, Defendant NORTHWAY deploys his taser, and AARON MICHAEL PARKER immediately falls to the ground behind the ambulance.

36.     Defendant     SHIELD     and     Defendant DEUTSCHMAN then enter the scene and repeatedly strike AARON     MICHAEL     PARKER,     AARON     MICHAEL PARKER, who was not a threat or resisting in any manner that necessitated that level of force.

37.      Then, at about 22:52:29, Defendant NORTHWAY deploys his taser a second time against AARON MICHAEL PARKER.

38.     Defendant DEUTSCHMAN then hits AARON MICHAEL PARKER in the face and head with a closed fist multiple times when AARON MICHAEL PARKER was not a threat or resisting in any manner that constituted excessive force.

39.     Defendant the NORTHWAY deploys his taser a third time against AARON MICHAEL PARKER as AARON MICHAEL PARKER is being restrained. NORTHWAY tased

AARON MICHAEL PARKER three (3) times in sixty-six (66) seconds. At the time of each taser deployment, AARON MICHAEL PARKER was not a threat or resisting in any manner that necessitated that level of force, which constitutes excessive force.

40.    Defendants SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH can be seen restraining, tackling, hitting AARON MICHAEL PARKER, and otherwise performing the excited delirium pin upon AARON MICHAEL PARKER, who was not a threat or resisting in any manner that necessitated that level of force.

41.    AARON MICHAEL PARKER was then restrained by Defendants SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH in the excited delirium pin for over fifteen (15) minutes.

42.    Defendants SHIELDS, DEUTSCHMAN, KUTCHERA, ROBERTS, ROTH, SCHNEIDER, and CROUCH finally released AARON MICHAEL PARKER, only after he was pulseless, breathless, and lifeless.

43.    Paramedics stayed on the scene and attempted to resuscitate AARON MICHAEL PARKER before transporting him to Tallahassee Medical Center. He was later removed from life support and pronounced dead on or about February 18, 2018.

44.    Investigator Paul Osborn of the TPD was assigned to investigate the incident and referenced the LCSO helicopter video. The TPD internal affairs unit then conducted no legitimate investigation into the officer's conduct and concluded that the Defendant officers named herein did not violate TPD policy and otherwise ratified the conduct of the Defendant Officers described herein.

45.    TPD had the video, and despite having requested it multiple times, TPD never turned over the video to the family, whitewashed the officers' actions, and very quickly found no wrongdoing on the part of their officers.

46.    In the Use of Force Report, dated February 19, 2018, the final policymaker at TPD, Defendant CLAYTON, did not ever view the video of the incident as part of the investigation when reviewing his officers' conduct.

47.     The TPD did not use the assistance of the Florida Department of Law Enforcement (FDLE) to perform an independent investigation regarding the in-custody death, the physical force, the medication, or repeated taser use upon AARON MICHAEL PARKER, causing his death.

48.     Since April 2011, after the in-custody death of Kevin Campbell, TPD and the City of Tallahassee knew or should have known of the ongoing, systematic issue with their police officers and the use of excessive force.

49.     In 2014, the TPD launched a review of its department using the Police Executive Research Forum (PERF) to provide a review and assessment of TPD policies and procedures and failed to take any action.

50.     In the Summary of recommendations, the PERF suggested that the TPD conduct department-wide in-service training for all sworn personnel regarding the changes to use-of-force policy and practice that are put in place due to the assessment. The PERF further recommended that the "TPD shift from a policy based only on a use-of-force matrix, or continuum, to a system based on the concept of "objective reasonableness," as defined in the US Supreme Court's landmark 1989 case *Graham v. Connor*. Objective reasonableness requires officers to gauge the level of a subject's resistance and respond with the appropriate level of force based on the totality of circumstances."

51.     The TPD never adopted the recommendations of PERF despite the department-wide controversy surrounding in-custody deaths and the use of force within the department.

52.     The PERF recommended that the TPD improve "General Order 60, Use of Force, including Chapter 776, Florida Statutes, Justifiable Use of Force, and Conducted Energy Weapons by clarifying or adding more precise definitions of key terms." The TPD never adopted the recommendations of PERF despite the department-wide controversy surrounding in-custody deaths and the use of force within the department.

53.     The PERF also recommended that the TPD revise "General Order 60, VIII, D regarding Use of Force to be more specific about how a policy violation will be investigated. The policy should reflect complaints of excessive or inappropriate

use of force that the Internal Affairs Unit will investigate." The TPD never adopted the recommendations of the PERF despite the department-wide controversy surrounding in-custody deaths and the use of force within the department.

54.     The PERF further recommended "a number of enhancements to the TPD's Electronic Control Weapon (ECW) policy, General Order 7, Electronic Control Device, which includes the description and use of tasers." The TPD never adopted the recommendations of PERF despite the department-wide controversy surrounding in-custody deaths and the use of force within the department.

55.     The PERF also recommended that officers attend "Mental Health First Aid training to learn the signs of mental health illness and addiction. This training also teaches officers how to assess a mental crisis and resources to help persons with mental illness." The TPD never adopted the recommendations of PERF despite the department-wide controversy surrounding in-custody deaths and the use of force within the department.

56.     The PERF recommended that the City and the TPD establish "plans to form crisis intervention teams that pair police officers with mental health care providers." The TPD never adopted the recommendations of PERF despite the department-wide controversy surrounding in-custody deaths and the use of force within the department.

57.     After the PERF review and despite being aware of the significant issues within their department, the TPD failed to change the policies, failed to train officers, and continued to allow unqualified officers to patrol the City under the color of law.

58.     The ongoing, systematic, widespread conditions within the TPD regarding excessive force and failure to adopt policies and procedures contributed to and or caused AARON MICHAEL PARKER'S death. *See* DOC 34.

## II. <u>Legal Analysis</u>

4. In ruling on a motion to dismiss, this Court must view the

Complaint in the light most favorable to Plaintiff. *Scheuer v. Rhodes*, 416

U.S. 232 (1974). The Court must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the Complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The Court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

5. In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Instead, the Complaint need only "contain either direct or inferential

allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.* (internal citation and quotation omitted). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the Defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

## III. Officer Liability under 42 U.S.C. s 1983

6. The Plaintiff has sued the individual Officers in the Second Amended Complaint alleging that each Defendant: (1) used excessive force upon AARON MICHAEL PARKER; (2) was recklessly indifferent to AARON MICHAEL PARKER's serious medical needs; and (3) failed to intervene and protect AARON MICHAEL PARKER from the other Defendants' use of excessive force, and that failure caused him to pass away.

7. The Eleventh Circuit has repeatedly stated that "[w]e analyze a claim of excessive force under the Fourth Amendment's 'objective reasonableness' standard*." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009)* (citation omitted). To decide whether the force used was reasonable, we examine "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury

inflicted." *Draper v. Reynolds, 369 F.3d 1270, 1277–78 (11th Cir. 2004)* (footnote omitted). The amount of force used must be "reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Id. at 1277 n. 13.* We consider the totality of the circumstances from the perspective of a reasonable officer on the scene, not "with the 20/20 vision of hindsight." *Oliver, 586 F.3d at 905* (quotation marks omitted)." *Boynton v. City of Tallahassee,* 650 Fed.Appx. 654 (11th Circuit May 24, 2016).

8. In *Oliver*, the Eleventh Circuit further stated, "[i]n 2009 this Court considered the reasonableness of an officer's repeated use of a taser on an individual who was not accused of any crime; who did not pose an immediate threat to the officer or others; who was not belligerent or aggressive; and who was not trying to flee or evade arrest." *Oliver*, 586 F.3d at 906–07. The officer in *Oliver* deployed her taser "at least eight and as many as eleven or twelve times," even after the individual was "immobilized," "limp," and "writhing in pain." *Id.* at 908. Under those circumstances, we held that the officer was not entitled to qualified immunity because the force used was "so plainly unnecessary and disproportionate that no reasonable officer could have thought that [it] was legal." *Boynton v. City of Tallahassee,* 650 Fed.Appx. 654 (11th Cir. 2016).

"In light of *Oliver*, a reasonable officer in Norton's position would have known that repeatedly tasing Boynton, who was not argumentative, aggressive, or mobile, was unreasonable under the Fourth Amendment. *Id*. Norton is not entitled to qualified immunity on Boynton's excessive force claim at this time." *Id.*

9. In the instant case, the Plaintiff has alleged in the Second Amended Complaint that: (1) Defendant NORTHWAY tased AARON MICHAEL PARKER three times in as little as sixty-six (66) seconds for no lawful reason, then held AARON MICHAEL PARKER in a fixed position on the ground so AARON MICHAEL PARKER could not properly breathe or move for almost fifteen (15) minutes, causing AARON MICHAEL PARKER to pass away; (2) Defendant SHIELDS held AARON MICHAEL PARKER in a fixed position on the ground, where AARON MICHAEL PARKER could not properly breathe and move for almost fifteen (15) minutes, causing AARON MICHAEL PARKER to pass away; (3) Defendant DEUTSCHMAN along with other officers held AARON MICHAEL PARKER in a fixed position on the ground, where AARON MICHAEL PARKER could not properly breathe and move for almost fifteen (15) minutes, causing AARON MICHAEL PARKER to pass away; (4) Defendant KUTCHERA, along with other officers held AARON

MICHAEL PARKER in a fixed position on the ground, where AARON MICHAEL PARKER could not properly breathe and move for almost fifteen (15) minutes, causing AARON MICHAEL PARKER to pass away; (5) Defendant ROBERTS, along with other officers, held AARON MICHAEL PARKER in a fixed position on the ground, where AARON MICHAEL PARKER could not properly breathe and move for almost fifteen (15) minutes, causing AARON MICHAEL PARKER to pass away; (6) Defendant ROTH held AARON MICHAEL PARKER in a fixed position on the ground, where AARON MICHAEL PARKER could not properly breathe and move for almost fifteen (15) minutes, causing AARON MICHAEL PARKER to pass away; (7) Defendant SCHNEIDER, along with other officers held AARON MICHAEL PARKER in a fixed position on the ground, where AARON MICHAEL PARKER could not properly breathe and move for almost fifteen (15) minutes, causing AARON MICHAEL PARKER to pass away; (8) Defendant CROUCH, along with other officers held AARON MICHAEL PARKER in a fixed position on the ground, where AARON MICHAEL PARKER could not properly breathe and move for almost fifteen minutes, causing AARON MICHAEL PARKER to pass away.

10. In addition to counts raised in the Second Amended Complaint, the Plaintiff has also alleged a single count against each Defendant for failing to intervene and stop the other Defendants' unlawful conduct.

11. Contrary to the assertions made by the Defendants' in the Motion to Dismiss, Plaintiff has alleged that at least one officer Defendant improperly tased AARON MICHAEL PARKER, that all of the named Defendants acted in concert, and that all of the named Defendants held AARON MICHAEL PARKER  on the ground with their body weight for almost fifteen minutes (in an excited delirium[1] pin), for no lawful reason, causing AARON MICHAEL PARKER  to suffer from hypoxia, anoxic brain injury, kidney damage, and rhabdomyolysis, causing his death. Clearly, the Plaintiff has alleged sufficient facts to support the excessive force claim.

12. The Plaintiff has also alleged a count against every individual Defendant for acting with reckless indifference to AARON MICHAEL PARKER 's serious medical need. An officer can be liable for failing to treat a decedent's serious medical condition, if a party can show that decedent had

---

[1] The Plaintiff has alleged that excited delirium is not a real medical condition recognized by the American Medical Association and therefore any CITY policy created around a non-existent medical condition is unreasonable. For far too long, sedatives like ketamine and misapplied diagnoses like 'excited delirium' have been misused during law enforcement interactions and outside of medical settings" said AMA President-elect Gerald E. Harmon, M.D. "As physicians and leaders in medicine, it is our duty to define the medical terms that are being used to justify inappropriate and discriminatory actions by non-health care professionals. The adoption of this policy represents an urgent step forward in our efforts to remove obstacles that interfere with safe, high quality medical care – and makes clear that the AMA will continue to aggressively confront all forms of racism or police violence against our patients in marginalized and minoritized communities."

(1) an objectively serious medical need; (2) deliberate indifference to that need; and (3) that their indifference caused his injuries. *Boynton v. City of Tallahassee,* 650 Fed.Appx. 654 (11th Cir. 2016).

13. Here, Plaintiff has alleged that AARON MICHAEL PARKER was suffering from an unknown medical condition and had no illegal drugs in his system. Plaintiff has alleged that Defendant NORTHWAY tased AARON MICHAEL PARKER repeatedly. Then he, along with the other named individual Defendants put their body weight on AARON MICHAEL PARKER so that AARON MICHAEL PARKER could not breathe, thereby causing his death. Plaintiff has alleged sufficient facts to support their claims raised in the Second Amended Complaint.

## IV. Qualified Immunity.

14. Defendants have also moved to dismiss the Complaint, alleging that they are entitled to qualified immunity at this early stage of the proceedings. "Although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be ... raised and considered on a motion to dismiss." *St. George v. Pinellas Cty*., 285 F.3d 1334, 1337 (11th Cir. 2002). Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the "complaint fails to allege the violation of a clearly established constitutional right." *Id*.; *see*

*also Quiller v. Barclays Am./Credit, Inc*., 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd en banc* 764 F.2d 1400 (11th Cir. 1985). "This is a question of law that is reviewed "de novo, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." St. George, 285 F.3d at 1337. When reviewing the denial of a qualified immunity defense asserted in a motion to dismiss, appellate review is "limited to the four corners of the complaint." *Id.* "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id. See also Corbitt v. Vickers,* 929 F.3d 1304 (11th Cir. 2019).

15. "To overcome a qualified immunity defense, the Plaintiff must make two showings. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199–1200 (11th Cir. 2007). First, she "must establish that the defendant violated a constitutional right." *Id.* Second, she must show the violated right was "clearly established." Id. Although the lower federal courts were once required to consider the first prong before the second, they are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818.

16. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S. Ct. at 3039; see also *Hope v. Pelzer*, 536 U.S. 730, 736, 739, 122 S. Ct. 2508, 2513, 2515, 153 L.Ed.2d 666 (2002) (rejecting this Court's earlier requirement that "federal law by which the government official's conduct should be evaluated must be preexisting, obvious and mandatory" and not based on "abstractions" but instead only by "materially similar" cases as too rigid a gloss on qualified immunity law). Indeed, the "'salient question'... is whether the state of the law gave the defendants' fair warning' that their alleged conduct was unconstitutional." *Vaughan v. Cox,* 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting *Hope*, 536 U.S. at 741, 122 S. Ct. at 2516).

17. "Because identifying factually similar cases may be difficult in the excessive force context," *Lee v. Ferraro,* 284 F.3d 1188, 1198–99 (11th Cir. 2002), we may find fair warning in the law without also finding a factually

identical case. Since *Hope*, the Eleventh Circuit has identified three different ways a plaintiff can show that the state of the law gives officials fair warning of a clearly established right. First, she can still "show that a materially similar case has already been decided." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005). "This category consists of cases where judicial precedents are tied to particularized facts." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012). In determining whether a right is clearly established under this prong, this Court looks to "judicial decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the relevant state." *Griffin Indus.*, 496 F.3d at 1199 & n.6. Second, she can "also show that a broader, clearly established principle should control the novel facts" of a particular situation. *Mercado*, 407 F.3d at 1159 (citing *Hope,* 536 U.S. at 741, 122 S. Ct. at 2516). "[T]he principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Loftus,* 690 F.3d at 1205 (alteration in original). Put another way, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* Third, she could show that her case "fits within the exception of conduct which so obviously violates [the] constitution that prior case law

is unnecessary." *Mercado,* 407 F.3d at 1159. Under this final test, the qualified immunity defense can be successfully overcome in an excessive force case "only if the standards set forth in *Graham* and our own case law inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful." *Lee,* 284 F.3d at 1199 (alteration in original) (citation and internal quotation marks omitted). *See, e.g., Oliver v. Fiorino,* 586 F.3d 898, 907 (11th Cir. 2009). *See also Corbitt v. Vickers,* 929 F.3d 1304 (11th Cir. 2019).

18.    Here, Defendant Officers make a hasty, general, and far-reaching claim to their right to qualified immunity, claiming that the allegations in Plaintiff's Second Amended Complaint are insufficient to establish that any Defendant Officers knowingly violated a clearly established constitutional right. Nevertheless, the United States Court of Appeals for the Third Circuit has warned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x. 788, 791 n. 3 (3d Cir. 2009). Defendant Officers claim that they are entitled to qualified immunity as to Plaintiff's excessive use of force claims, alleging that they acted reasonably given the circumstances of this incident. Government officials executing discretionary

duties are only entitled to immunity where their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In this case, a reasonable person would have known that the physical force used on AARON MICHAEL PARKER was excessive, particularly given the Defendant Officer's combined weight atop of in excess of fifteen (15) minutes. Defendants have not asserted any facts that establish they are entitled to qualified immunity. In determining whether qualified immunity applies, the Court must contemplate whether the alleged facts, taken in the light most favorable to the Plaintiff, "show the officer's conduct violated a constitutional right" and "ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

19.   In the instant case, this Honorable Court should apply the above-cited case law and find that the Plaintiffs' Second Amended Complaint sufficiently alleged a clearly established constitutional violation against each Defendant. The Court should find that Plaintiff has sufficiently alleged a cause of action against each of the named Defendants, deny the Defendants' Motion to Dismiss, and allow this case to proceed forward.

**WHEREFORE**, EILEEN PARKER, as Personal Representative of THE ESTATE OF AARON MICHAEL PARKER, respectfully requests this Court deny the Defendants' Motion to Dismiss and Order the Defendants to respond accordingly.

Respectfully submitted,

/s/John Vernon Moore /s/
John Vernon Moore, Esquire
Florida Bar No.: 105403
The Law Office of John Vernon Moore, P.A.
700 N Wickham Road, Suite 206
Melbourne, Florida 32935
Tel. (321) 529-7777
Fax (321) 529-2289
Email: john@jmoorelegal.com
*Attorney for Plaintiff*

/s/ Bryan D. Savy /s/
Bryan D. Savy, Esquire
Florida Bar No.: 12442
997 S. Wickham Road
West Melbourne, Florida 32904
Tel. (321) 728-4911
Fax (321) 728-4870
Email: bsavy@brosslawoffice.com
*Attorney for Plaintiff*

## WORD COUNT CERTIFICATION

This document complies with word limits set forth in N.D. Fla. Local Rule 7.1(F) and contains 4,883 words, which includes the headings, footnotes, and quotations, but does not include the case style, signature block, or Certificates of Word Count and Service.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 2nd day of June 2022, a true and correct copy of the foregoing was electronically filed in the US District Court, Northern District of Florida, using the CM/ECF system, which will send a notice of the electronic filing to all counsel of record.

*/s/ John Vernon Moore /s/*
**JOHN VERNON MOORE**

*/s/ Bryan D. Savy /s/*
**BRYAN D. SAVY**