# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**EILEEN PARKER,**

    *Plaintiff*,

v.                                        Case No.:  4:22cv60-MW/MJF

**THE CITY OF TALLAHASSEE, et al.,**

    *Defendants*.

_____/

## ORDER DENYING MOTION TO DISMISS IN PART

This Court has considered, without hearing, Defendant Tallahassee's motion to dismiss, ECF No. 26, and Plaintiff's response, ECF No. 35. Because Plaintiff has alleged sufficient facts to state a claim that is plausible on its face, the motion to dismiss, ECF No. 26, is **DENIED in part**. However, because punitive damages may not be brought against municipalities under section 1983, punitive damages are stricken from Count I, and Defendant's motion, ECF No. 26, is **GRANTED in part**.

### I

This Court accepts the allegations in the complaint as true, and construes them in the light most favorable to Plaintiff. The allegations are as follows.

On February 9, 2018, a call was made to 911 to report that a young man, Aaron Michael Parker, was on the median of Tennessee St., Tallahassee, naked, dancing and yelling. ECF No. 22 at 6. Defendant Officer Northway was the first to arrive on

the scene, followed by EMTs. *Id.* at 6-7. Mr. Parker was unarmed, did not threaten Officer Northway, and did not attempt to flee. *Id.* at 6. Within four minutes of arrival, Officer Northway had tased Mr. Parker repeatedly, causing him to fall to the ground. *Id.* at 7. While this was happening, additional officers arrived on the scene. *Id.* Shortly upon arrival, Defendant Officers Shield and Deutschman repeatedly struck Mr. Parker. *Id.* at 10. Then, officers used their body weight to pin Mr. Parker to the ground in an "excited delirium pin," causing Mr. Parker to gasp for air. *Id.* at 8. While he was restrained, officers directed EMTs to administer medication to Mr. Parker. *Id.* at 9. Officers held Mr. Parker pinned to the ground for roughly fifteen minutes. *Id.* Mr. Parker was without a pulse at that point, and EMTs attempted to revive him. *Id.* at 11. EMTs transported Mr. Parker to Tallahassee Medical Center where he was placed on life support. *Id.* He was later removed from life support and pronounced dead on or about February 18, 2018. *Id.*

An investigation of the incident was conducted, and Tallahassee Police Department Internal Affairs determined that no misconduct had occurred. ECF No. *Id.* at 11-12. Defendant Officer Clayton reviewed the incident and filled out the Use of Force Report, but he did not view the video footage generated by the Leon County Sheriff's Office helicopter as part of his report. *Id.* at 11-12. Nor did TPD use the assistance of the Florida Department of Law Enforcement to perform an independent investigation regarding the incident. *Id.* at 12.

In 2014, TPD with the help of the Police Executive Research Forum (PERF), engaged in a review and assessment of TPD policies and procedures. *Id.* at 12. PERF recommended six specific changes to TPD's use-of-force policy, and that TPD conduct department-wide in-service training for all sworn personnel regarding the changes. *Id.* The recommendations were to:

1. Shift from a policy based only on a use-of-force matrix, or continuum, to a system based on the concept of "objective reasonableness," requiring officers to gauge the level of a subject's resistance and respond with the appropriate level of force based on the totality of circumstances.
2. Revise *General Order 60, Use of Force, including Chapter 776, Florida Statutes, Justifiable Use of Force, and Conducted Energy Weapons* by clarifying or adding more precise definitions of key terms.
3. Revise *General Order 60, VIII, D regarding Use of Force* to be more specific about how a policy violation will be investigated, and to reflect complaints of excessive or inappropriate use of force that the Internal Affairs Unit will investigate
4. Make a number of enhancements to the TPD's *Electronic Control Weapon (ECW) policy, General Order 7, Electronic Control Device*, which includes the description and use of tasers
5. Conduct Mental Health First Aid training to teach officers about the signs of mental health illness and addiction, as well as how to assess a mental crisis and resources to help persons with mental illness.
6. Establish plans to form crisis intervention teams that pair police officers with mental health care providers.

TDP did not make the changes recommended by PERF. *Id.* at 14.

Plaintiff Eileen Parker, the Personal Representative of the Estate of Aaron Parker, has brought the instant action.

3

## II

This Court accepts the allegations in the complaint as true, and construes them in the light most favorable to Plaintiff. *See Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

Typically, on a motion to dismiss the Court limits its analysis to the four corners of the complaint. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment . . . if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). In this context, a document is undisputed if "the authenticity of the document is not challenged." *Id.*

Additionally, while the "court may strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), motions to strike will usually "be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Reinhardt v. Agwunobi*, 2005 WL 8164133, at *1 (N.D. Fla. Oct. 12, 2005) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (1990)). This Court addresses the pertinent allegations below.

### III

Before engaging with the arguments made by both parties, this Court must determine whether to limit its review to the four corners of the complaint, or to consider Defendant's exhibits 1 and 2. To be considered, the documents must be both central to Plaintiff's claim, and the authenticity of the documents must be undisputed. Exhibit 1 is TPD's *General Order 60* as of 2010, before PERF made policy change recommendations to TPD, and Exhibit 2 is TPD's *General Order 60* as of 2016, after PERF's involvement. First, the documents are central to Plaintiff's claim. Plaintiff cited *General Order 60* in her complaint, and alleges that TPD failed to adopt necessary changes, resulting in the death of Mr. Parker. This is relevant to whether Defendant Tallahassee has a policy which subjects it to section 1983 liability. Second, the authenticity of the documents are undisputed. While Plaintiff argues the appropriateness of considering an exhibit attached to a motion to dismiss,

she does not challenge the documents' authenticity. As such, this Court may consider Defendant's exhibits 1 and 2 without converting the motion to dismiss to a motion for summary judgment.

**A**

To begin, Defendant Tallahassee argues that Plaintiff's claim should be dismissed for failing to sufficiently allege municipal liability under 42 U.S.C. § 1983. "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, a municipality can be held liable when the execution of its customs or policies injure a plaintiff. *Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir. 1989). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)).

**1**

First, Defendant Tallahassee argues that Plaintiff has not alleged facts sufficient to state a plausible claim that Mr. Parker's constitutional rights were violated. ECF No. 26 at 9. This Court disagrees.

Plaintiff has alleged specific facts which lead to the plausible inference that officers were deliberately indifferent to Mr. Parker's serious medical needs. She alleges that officers used their body weight to pin Mr. Parker to the ground for roughly fifteen minutes, causing him to gasp for air. ECF No. 22 at 8. Only when Mr. Parker was without a pulse did officers allow EMTs to attempt to revive him and transport him to Tallahassee Medical Center. *Id.* at 11. These facts satisfy a prima facie case for deliberate indifference. Whether Plaintiff can produce evidence that the medical need was obvious, officers were deliberately indifferent, and officers delayed necessary medical care, are questions more appropriate for summary judgment, not a motion to dismiss.

Plaintiff has also alleged specific facts sufficient to state a claim for excessive force, a violation of the Fourth Amendment. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Plaintiff alleges Mr. Parker was unarmed, did not threaten officers, and did not attempt to flee, so the need for force may have been slight. ECF No. 22 at 6. However, officers tased Mr. Parker multiple times and pinned him to the ground until he was without a pulse. *Id.* at 7-11. Based on these facts, it is plausible to conclude officers did not use an objectively reasonable amount of force. However, again, whether Plaintiff can produce evidence in support of this claim is a question more appropriate for summary judgment.

Second, Defendant Tallahassee argues that Plaintiff has failed to identify a city policy that caused a constitutional deprivation. Defendant asserts that Plaintiff's explanation about the Police Executive Research Forum's (PERF) involvement in crafting TPD policy is insufficient because Plaintiff's burden is to point to an existing policy which resulted in a constitutional deprivation. ECF No. 26 at 10. Rather, Defendant says, Plaintiff merely articulated where policies could be better. *Id.* This Court disagrees. In Plaintiff's description of PERF's involvement she cites existing official policy—the *TPD General Orders Manual*. ECF No. 22 at 12-14. Specifically, she cites *General Order 60* and *General Order 7*. It is certainly plausible that policies and procedures outlined in the *TPD General Orders Manual* resulted in officers tasing and restraining Mr. Parker, ultimately resulting in his death.

Next, Defendant argues that even if Plaintiff's allegations are sufficient to show there was an official policy, that Plaintiff's claims about that policy are false. In support of this Defendant cites exhibits 1 and 2, the *General Order 60* before and after PERF review. ECF No. 26 at 10. However, the exhibits are of limited value. While some changes were made to *General Order 60*, this is not the only portion of the TPD General Orders Manual to which Plaintiff refers in her complaint. Defendant's exhibits do not address the other changes recommended by PERF

including changing *General Order 7*, adding mental health awareness training, and creating crisis intervention teams of medical professionals. To say that Defendant's exhibits prove that Plaintiff's claims are entirely false and her allegations concerning the PERF report should be wholly discredited is a step further than these exhibits allow.

Even if these facts were insufficient to claim Defendant Tallahassee had an officially promulgated policy, Plaintiff has alleged facts sufficient to claim that Defendant Tallahassee's failure to train officers constituted an official government policy. "[A] local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61, (2011). Plaintiff may allege that Defendant Tallahassee violated Mr. Parker's constitutional rights by failing to train officers, if the failure to train amounts to "deliberate indifference to the rights of persons with whom the [officers] come into contact." *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989)).

Here, Plaintiff alleged TPD sought out the help of PERF to review TPD policy and make recommendations. ECF No. 22 at 22. In doing so, PERF recommended TPD conduct department-wide in-service training for all sworn personnel regarding the changes to the use-of-force policies that were put in place due to the assessment. *Id.* Defendant's exhibits do not indicate whether TPD conducted the recommended

9

training. *Id.* at 12. Given that TPD sought out PERF's involvement, it is reasonable to infer Defendant Tallahassee knew these trainings were necessary to protect the rights of persons with whom officers came into conduct. And if Defendant did not conduct these trainings, as Plaintiff alleges, the failure to train may plausibly amount to deliberate indifference, and therefore constitute an official policy for section 1983 purposes.

Ultimately, Plaintiff has alleged facts sufficient to claim that an officially promulgated policy—the *TPD General Orders Manual*—or a failure to train, resulted in Mr. Parker's death, giving rise to section 1983 liability. This Court dismisses counts, not theories of liability, so Plaintiff need only sufficiently state a claim as to one theory of liability to survive a motion to dismiss. As such, this Court need not address Defendant's arguments that Plaintiff has not sufficiently plead that ratification or unofficial custom gives rise to the same liability. Accordingly, the motion to dismiss, ECF No. 26, is **DENIED in part**.

### B

Next, Defendant argues that Plaintiff's claim for punitive damages against the city must be stricken. ECF No. 26 at 26. The Supreme Court has held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). As such, Plaintiff's prayer

for punitive damages in Count I is stricken, and Defendant Tallahassee's motion, ECF No. 26, is **GRANTED in part**.

Accordingly,

1. The motion to dismiss, ECF No. 26, is **DENIED in part**.

2. The motion to strike punitive damages from Count I, ECF No. 26, is **GRANTED**.

**SO ORDERED on June 8, 2022.**

<u>s/Mark E. Walker</u>
**Chief United States District Judge**